## UGHBANKS v. ARMSTRONG, WARDEN OF THE MICHIGAN STATE PRISON.

### ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

No. 435. Submitted January 20, 1908.—Decided February 24, 1908.

The indeterminate sentence law of Michigan of 1903, as construed and sustained according to its own constitution, by the highest court of that State, does not violate any provision of the Federal Constitution. It is of a character similar to the Illinois act, sustained by this court in *Dreyer* v. *Illinois*, 187 U. S. 71.

When a subsequently enacted criminal law is more drastic than the existing law which in terms is repealed thereby, the claim that it is *ex post facto* as to one imprisoned under the former law and therefore void, and that the earlier law being repealed he cannot be held thereunder, has no force in this court where the state court has held that the later law does not repeal the earlier law as to those sentenced thereunder. In such a case this court follows the construction of the state court.

The Sixth and Eighth Amendments to the Federal Constitution do not limit the power of the State.

The Fourteenth Amendment to the Federal Constitution does not limit the power of the State in dealing with crime committed within its own borders or with the punishment thereof. But a State must not deprive particular persons or classes of persons of equal and impartial justice.

This court follows the construction of an indeterminate sentence law by the highest court of the State, to the effect that where the maximum term of imprisonment for a crime has been fixed by statute a maximum term fixed by the court of a shorter period is simply void.

The granting of favors by a State to criminals in its prisons is entirely a matter of policy to be determined by the legislature, which may attach thereto such conditions as it sees fit, and where it places the granting of such favors in the discretion of an executive officer it is not bound to give the convict applying therefor a hearing.

The provision in the indeterminate law of Michigan of 1903, excepting prisoners twice sentenced before from the privilege of parole, extended in the discretion of the Executive to prisoners after the expiration of

their minimum sentence, does not deprive convicts of the excepted class of their liberty without due process of law, or deny to them the equal protection of the laws.

THIS writ of error brings up a judgment of the Supreme Court of Michigan, denying the application of the plaintiff in error for a writ of *habeas corpus*, to inquire into the cause of his detention in, and to obtain his discharge from, the state prison at Jackson.

It appears from the record that on the seventeenth of Mar n, 1904, the plaintiff in error was proceeded against in the ircuit Court for the county of Washtenaw, in the State of Michigan, on an information filed by the prosecuting attorney for that county, charging the plaintiff in error with having committed the crime of burglary on the fifteenth of March, 1904. Upon being arraigned upon such information he pleaded guilty and was, on the day mentioned, sentenced under the indeterminate sentence act of the State to be confined in the state prison at Jackson at hard labor for a period not less than one year and not more than two years. Public acts of Michigan, May 21, 1903, No. 136, p. 168. His term of imprisonment, counting the maximum period for which he was sentenced, ended, as he asserts, on March 17, 1906, even without any deduction for good behavior.

In his petition for the writ plaintiff in error stated that bv the record kept and retained by the warden of the Michigan state prison at Jackson it appeared, as plaintiff in error was advised, that he had been twice before convicted of felony, and that he had served four years in Kingston, Canada, and four years in Jackson, Michigan, on account thereof, and that he was a resident of Canada and had never resided in the State of Michigan or in the United States.

He made application at the end of the minimum term of his sentence to the advisory board, provided for by § 4 of the above act, for his discharge on parole, but he was notified that his application could not be heard or considered for the reason

that it appeared that he had been twice before convicted of a felony, and the act provides that no person who has been twice previously convicted of a felony shall be eligible to parole.

After the expiration of the maximum term named in the sentence, being still detained in prison under the claim that the law provided a maximum term of imprisonment of five years in such a case as his, which term had not elapsed, the plaintiff in error applied to the Supreme Court of Michigan for a writ of *habeas corpus* to obtain his discharge, and upon the denial of the application brought the case here.

*Mr. John B. Chaddock* and *Mr. George E. Nichols* for plaintiff in error:

By the very language of the constitutional amendment and the resolution which preceded, it is evident that the legislature and the people must have intended to obtain power, through this amendment, to pass indeterminate sentence laws, as such laws are generally understood and accepted. The power of the legislature, therefore, was limited to the passage of such an indeterminate sentence law as was contemplated by the framers of the amendment.

It follows that any statute enacted under this constitutional amendment, which permits the imposition of any punishment, other than an indeterminate sentence, as contemplated thereby, is in violation of the constitutional amendment, and if it violates the provisions, or any of them, of the Federal Constitution, the acts are void, and all sentences pronounced under them are invalid, and the party restrained of his liberty thereby is entitled to his discharge, especially as in this case, if he has served his minimum sentence.

Both acts referred to not only authorize the imposition of a sentence, which in no sense of the word can be classed as indeterminate, but the machinery of the law for carrying the sentence into effect violates the state, as well as the Federal, Constitution, and deprives the citizen of his liberty without due process of law.

While the indeterminate sentence act says in terms that it shall apply to every sentence thereafter imposed, with only the two exceptions of persons sentenced for life, and children under fifteen years of age, yet it later provides that no prisoner who has been twice previously convicted of a felony shall be eligible to parole under the provisions of the act. See act 136, Public acts 1903, §§ 1, 4. Thus although plaintiff in error was sentenced as the law required under act 136, yet he cannot, if the charge against him be true, have any of its benefits or advantages.

If it is due process of law for the executive to determine and fix the period for which a person convicted of crime shall remain in prison, upon the conduct of the prisoner while in prison, and if such process meets the requirements of the punishment authorized by the constitutional amendment, providing for an indeterminate sentence, in one case, it does in all cases. The opportunity to earn release by good conduct is an essential feature of the indeterminate sentence amendment to the constitution. The power to limit and abridge this opportunity in either case implies the right to deny it entirely. To withhold in one case what has been granted as right in other and similar cases, is unjust and a grievous discrimination, contrary to § 1 of the Fourteenth Amendment. If all persons must be sentenced under the law, then it should apply equally to all. See *Easton* v. *State*, 11 Arkansas, 481.

The act of 1903 (act 136 of Public acts of 1903), under which plaintiff in error was sentenced, having been repealed by the act of 1905 (§ 17, act 184, Public acts of 1905), the only color of right which the warden now has to hold the plaintiff in error is under the act of 1905, and the latter act being *ex post facto* as to him, his detention is unlawful as in violation of the Constitution of the United States. The new act undoubtedly alters the situation of the prisoner to his detriment and so brings the case within the authorities. *Ex parte Medley*, 134 U. S. 164; *In the Matter of Canfield*, 98 Michigan, 644; *Murphy* v. *Com.*, 52 N. E. Rep. 505; *In re Murphy*, 87 Fed. Rep. 549;

*Cring.* v. *State,* 107 U.. S. 221; *State* v. *Tyree,* 77 Pac. Rep. 290.

*Mr. John E. Bird,* Attorney General of the State of Michigan, and *Mr. Henry E. Chase,* for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement, delivered the opinion of the court.

An act providing for an indeterminate sentence was first passed in Michigan on July 1, 1889, No. 228, p. 337, and was declared unconstitutional by the Supreme Court of that State. *People* v. *Cummings,* 88 Michigan, 249. A constitutional amendment was subsequently adopted (1901), which authorized the legislature to provide for an indeterminate sentence law, as punishment for crime, on conviction thereof. Art. 4, § 47, constitution of Michigan, as amended. See Laws of 1903, p. 452. Under the authority of this amendment the legislature, in 1903, passed act No. 136 of the public acts of that year. This act was held to be valid. *In re Campbell,* 138 Michigan, 597; *In re Duff,* 141 Michigan, 623. An act of a character very similar has been held to violate no provision of the Federal Constitution. *Dreyer* v. *Illinois,* 187 U. S. 71. While the act in question here was in force the crime of plaintiff in error was committed, and on the seventeenth of March, 1904, he was sentenced as already stated. The sentence fixed the maximum as well as the minimum term of imprisonment, but the fixing of a maximum term in the sentence has been held to be void, as not intended or authorized by the law of 1903, in any case where the statute providing for the punishment of a crime itself fixes the maximum term of imprisonment at a certain number of years. *In re Campbell; In re Duff, supra.*

In this case, where the maximum term for burglary is fixed by the statute at five years, the sentence fixing that term at two years was simply void, and the maximum term of imprisonment fixed by the statute takes the place of the maximum term

fixed in the sentence. *In re Campbell; In re Duff, supra.* Under this construction the term of imprisonment of the plaintiff in error has not yet expired.

He cannot, however, avail himself of the provisions of the statute in relation to applying for and obtaining his discharge on parole, after the expiration of the minimum term of the sentence, because he has been convicted of two previous felonies.

On June 7, 1905, Public acts of Michigan, No. 184, p. 268, the legislature passed another act on the same subject and repealed the act of 1903. The plaintiff in error contends that the provisions of the act of 1905 are more unfavorable to him than those of the act of 1903, and that it is invalid as to him because it is an *ex post facto* law, and, as the act of 1903 has been repealed, there is no act in force by which he can be further imprisoned.

Without stopping to inquire whether the act of 1905 would be in his case an *ex post facto* law, it may be stated that the Supreme Court of Michigan has held that the act of 1903 is not repealed as to those who were sentenced under it, and that as to them it is in full force, and the statute of 1905 has no application. *In re Manaca,* 146 Michigan, 697. In such a case as this we follow that construction of the constitution and laws of the State which has been given them by the highest court thereof. There is, therefore, no force in the contention made on the part of the plaintiff in error that the act of 1905 applies in his case and is *ex post facto*.

It is also urged that the result of the holding of the state court is that plaintiff in error is imprisoned under the indeterminate sentence act of 1903 for the maximum period (five years) provided by the general statute for the crime of which he has been convicted, without any discretion on the part of the court as to the term of his sentence, while he is also refused the right to apply under the act for a discharge upon his parole after the expiration of the minimum term of the sentence, because, it is alleged, that as to him there can be no

minimum sentence, as he has been twice before convicted of a felony, although he has had no opportunity of being heard as to that allegation. He now urges that he is imprisoned in violation of the Sixth and Eighth and the Fourteenth Amendments of the Federal Constitution.

The claim rests upon an entire misapprehension of the rights of the plaintiff in error under these Amendments. The Sixth and Eighth Amendments do not limit the powers of the States, as has many times been decided. *Spies* v. *Illinois*, 123 U. S. 131; *Eilenbecker* v. *District Court &c.*, 134 U. S. 31; *Brown* v. *New Jersey*, 175 U. S. 172–174; *Maxwell* v. *Dow*, 176 U. S. 581, 586. The plaintiff in error says that under the Fourteenth Amendment he is imprisoned without due process of law and is denied the equal protection of the laws. The last-named Amendment was not intended to, and does not, limit the powers of a State in dealing with crime committed within its own borders or with the punishment thereof, although no State can deprive particular persons or classes of persons of equal and impartial justice under the law. *In re Kemmler*, 136 U. S. 436, 448; *Caldwell* v. *Texas*, 137 U. S. 692. The act in question provides for the granting of a favor to persons convicted of crime who are confined in a state prison. *People* v. *Cook*, 147 Michigan, 127–132. It gives to a criminal so confined, subsequent to the expiration of the minimum term of imprisonment stated in the sentence, the privilege to make application for parole to the warden or superintendent of the prison where he is confined, and the warden is directed to send such application to the governor. Upon its receipt the governor may order such investigation by the advisory board in the matter of pardons as he may deem advisable and necessary, but the authority to grant paroles, under such rules and regulations as the governor may adopt, is conferred by the statute exclusively upon that officer. He is not bound to grant a parole in any case, and § 4 provides "that no prisoner who has been twice previously convicted of a felony shall be eligible to parole under the provisions of this act." As the State is thus provid-

ing for the granting of a favor to a convicted criminal confined within one of its prisons, it may (unless under extraordinary circumstances) attach such conditions to the application for, or to the granting of, the favor as it may deem proper, or it may in its discretion exclude such classes of persons from participation in the favor as may to it seem fit. If the State choose to grant this privilege to make application to the governor for a discharge upon parole in the case of one class of criminals and deny it to others, such, for instance, as those who have been twice convicted of a felony, it is a question of state policy exclusively for the State to decide, as is also the procedure to ascertain the fact, as well as the kind or amount of evidence upon which to base its determination. It is not bound to give the convict a hearing upon the question of prior conviction, and a failure to give it violates no provision of the Federal Constitution. The application for parole is, in any event, addressed exclusively to the discretion of the governor. Even after the convict is at large by virtue of the parole granted, he is still deemed to be serving out the sentence imposed upon him, and he remains technically in the legal custody and under the control of the governor, "subject at any time to be taken back within the inclosure of the prison from which he was permitted to go at large, for any reason that shall be satisfactory to the governor, and at his sole discretion; and full power to retake and return any such paroled convict to the prison from which he was permitted to go at large is hereby expressly conferred upon the governor." Section 5, act of 1903, *supra*.

We find nothing in the record which shows any violation of the Federal Constitution, and the judgment of the Supreme Court of Michigan must, therefore, be

*Affirmed.*

MR. JUSTICE HARLAN dissents.