Common Pleas Court of Hamilton County.

ELEANOR BRADFORD DAVIS V. FLORENCE B. LAWS, ET AL.

Decided July 24, 1928.

*Peck, Shaffer & Williams,* for the plaintiff.
*DeCamp, Sutphin & Brumleve,* for defendants.

SHOOK, J.

This cause, which is an action to quiet title, comes on for hearing upon plaintiff's demurrer to the answer.

The admitted facts are that James Bradford died on December 25, 1875, seized of certain real estate. His last will and testament was admitted to probate by the Probate Court of Hamilton County, on January 3, 1876. Item IV of said will, which is the subject of this controversy, reads as follows:

"I hereby will and devise to my daughter, Eleanora Bradford, Number 44 Fifth Street, being part of lot 168, and sixteen and a half feet in front of Fifth, and thirty-three and a half feet west of Walnut, to be held by her during her natural life, and at her death to her heirs at law in fee."

The life tenant, Eleanora Bradford, possessed and enjoyed said property during the term of her natural life. She died January 31, 1927, without issue of her body, never having been married.

The said Eleanora Bradford left surviving her, in addition to plaintiff herein, the defendants Florence B. Laws, Hannah B. Neff, Blanche L. Bradford, her sisters, and Hannah B. Armstrong, daughter of Josephine B. Davis, deceased sister of Eleanora Bradford. Plaintiff is the sister of Hannah B. Armstrong.

The testator left surviving him seven children, two sons and five daughters. One son died in 1887 and the other in 1897, leaving no children surviving.

During the lifetime of said Eleanora Bradford, upon the 10th day of May, 1907, the property referred to in Item IV of her last will and testament was leased to defendant, The United Cigar Stores Company, for a period of twenty-three years, ending May 31, 1930, by proceedings in this court under statutes of Ohio authorizing the

leasing of an entailed estate. Thereafter, on July 1, 1925, the said property so subject to said lease to The United Cigar Stores Company, was again leased to defendant, Milton Silverglade, by like proceedings had in this court, for the full term of fifteen years on and after July 1, 1925.

In this cause Eleanora Bradford was plaintiff and Eleanor Bradford Davis, plaintiff herein, Blanche L. Bradford, Florence B. Laws, Hannah B. Neff, C. Gordon Neff, and Hannah B. Armstrong, were defendants.

On March 18th, 1920, in the Probate Court of Hamilton County, Ohio, this plaintiff was designated by the life tenant under this will, Eleanora Brodfard, as the sole heir at law by virtue of Section 8598 of the General Code.

Plaintiff claims the entirety of said estate, by reason of the fact that she was designated as the sole heir at law of said life tenant in said proceedings.

The defendant, Hannah B. Armstrong, in her answer claims to be entitled to an undivided one-eighth interest in said real estate, as the daughter of Josephine B. Davis, sister of said Eleanora Bradford.

The defendants Blanche L. Bradford and Hannah B. Neff, each claim an undivided one-fourth interest in this property as sisters of decedent Eleanora Bradford.

The demurrer is directed against the answer of Florence B. Laws, who claims to have an estate, or interest, in this property adverse to plaintiff. The said answer of Florence B. Laws states four defenses. As the determination of this demurrer will affect substantially the rights of the other defendants, this opinion is addressed likewise to them.

Succinctly stated, the first defense claims that under this will said defendant and her sisters and brothers were the heirs at law of Eleanora Bradford and that the remainder in said property, subject to the life estate so devised to Eleanora Bradford, became at once vested in this defendant and her sisters and brothers, by reason of the fact that they became entitled to the next estate of inheritance in said property after the death of the life tenant.

For her second defense the said Florence B. Laws, claims that the proceedings in the Probate Court, designating the plaintiff as their heir at law of Eleanora Bradford, were

taken by the life tenant without notice to said defendant, and with no opportunity to be heard, and that plaintiff herein, so designated in 1920 in the Probate Court of Hamilton County, was not the heir at law of Eleanora Bradford under the proper construction of Item IV of the will of James Bradford, deceased.

For her third defense she claims that Section 8598 of the General Code of Ohio, purporting to authorize the designation of an heir, is unconstitutional and void in that it attempts to take away from said defendant certain vested property rights under the will of her father, in contravention of Articles 5 and 14 of the Amendments to the Constitution of the United States.

For her fourth defense she claims that a petition was filed by the life tenant Eleanora Bradford in this court in 1907, under Revised Statutes 5864 *et seq.* (now General Code 11926 *et seq.*) (proceedings had to lease the entailed estate) alleging that this defendant, Florence B. Laws, and the other alleged heirs at law of the said Eleanora Bradford, were all the persons interested in the estate, or who might become interested therein, as remaindermen. These facts were admitted in the answer of defendant. It is the contention of defendant that the court found in effect that the said Eleanora Bradford, deceased, this plaintiff and this defendant and others were all of the persons in being who were interested in the said estate, or who, by the terms of said will, thereafter became interested as heirs, reversioners or otherwise. That the said decree determined that this defendant was an heir at law of the said Eleanora Bradford, that said fact is *res adjudicata,* and that the designation by Eleanora Bradford in 1920 of the plaintiff as her sole heir at law is of no force or effect to entitle plaintiff to the entire fee of this property.

In passing upon the demurrer to this answer the court has carefully analyzed the numerous authorities cited by counsel representing the various parties and has considered many others bearing upon this subject matter. We are bearing in mind the valuable interests affected and realize the responsibility of this court in fixing rights which add another seven-eighths of this estate to the

plaintiff's original one-eighth, thereby depriving defendants of the same.

We will pass upon the legal questions in the order of the defenses therein.

### FIRST.

(a) Who were the heirs at law of Eleanora Bradford, according to the expressed intention of the testator in Item IV of his last will and testament?

(b) Did they acquire a vested remainder in said estate, which came into being at the time of the probating of this will on January 3, 1927?

At the outset we state two controlling principles: It is the duty of this court to discover from the paper writing in controversy, to-wit, the last will and testament of James Bradford, deceased, his intention.

Also, there can be no heirs at law of the living (*nemo est haeres viventis*); therefore, the date upon which this expression in Item IV is to be applied is that of the death of the life tenant, Eleanora Bradford, which occurred in January, 1927.

Eleanora Bradford Davis was appointed and designated the heir at law of Eleanora Bradford, by virtue of an act now known as Section 8598, General Code, passed April 29, 1854 (52 Ohio Laws, 78), which section reads:

"A person of sound mind and memory may appear before the Probate Judge of his county and in the presence of such judge and two disinterested persons of his or her acquaintance, file a written declaration, subscribed by him, which must be attested by such persons, declaring that, as his or her free and voluntary act, he or she did designate and appoint another, naming and stating the place of residence of such person specifically, to stand toward him in the relation of an heir-at-law in the event of his or her death. If satisfied that such declarant is of sound mind and memory and free from restraint, the judge thereupon shall enter that fact upon his journal, and make a complete record of such proceedings. Thenceforward the person thus designated will stand in the same relation, for all purposes, to such declarant as he or she would, if a child born in lawful wedlock. The rules of inheritance will be the same, between him and the relation by blood of the declarant, as if so born; and a certified

copy of such record will be *prima facie* evidence of the fact stated therein, and conclusive evidence, unless impeached for actual fraud or undue influence.

The meaning of the terms "heir" or "heir-at-law" as used in the Common Law, have been considerably modified by statute, while the law of adoption and designation of heirs, unknown in the Common Law, are now determined by statutory proceedings.

In analyzing the conflicting views of counsel, we believe that a proper construction of the following Ohio cases is determinative of the questions raised herein. We deem it unnecessary, therefore, to reinforce these authorities by any other citations:

*Phillips, Exr.,* v. *McConica, Guardian,* 59 O. S., 1; *Cochrel, a minor,* v. *Robinson, et al,* 113 O. S., 526; *Albright* v. *Albright,* 116 O. S., 668; *Smith et al* v. *Hunter et al,* 86 O. S., 106; *Surman* v. *Surman,* 114 O. S., 579; *Theobald* v. *Fugman,* 64 O. S., 473; *Barr* v. *Denny,* 79 O. S., 358; *Lisle* v. *Miller,* 21 C. C. (N.S.), 317; *Heath* v. *City of Cleveland,* 114 O. S., 535.

The McConica case, supra, is the principal authority in Ohio relied upon by defendant to support her contention. *Cochrel* v. *Robinson,* supra, insofar as the laws of inheritance are involved, applied the same rules to designated heirs as to adopted children.

In the McConica case the will construed contained the following clause:

"I hereby give and bequeath all the residue of my property of every description, moneys and credits, due me at my decease, or belonging to my estate, to be equally divided; one-half to the *heirs* of my daughter Refella, deceased wife of John McConica, namely: Wilbert, Thomas and Charles McConica, and Minnie McConica Fulton."

The grandson Wilbert, during his lifetime, legally adopted Mary McConica, an infant. This grandson died before the testator without leaving issue of his body. Unless the adopted child could be placed in the category of "issue," the legacy to the grandson would lapse. This conclusion was reached by reason of Section 5971, Revised Statutes (General Code, Section 10581), which reads:

"When a devise of real or personal estate is made to a child or other relative of the testator, if such child, or other relative was dead at the time the will was made, or dies thereafter, leaving issue surviving the testator, in either case such issue shall take the estate devised as the devisee would have done if he had survived the testator. * * *."

The court stated (pp. 8-9):

"True, Section 3140 Revised Statutes (8030 General Code), provides that such adopted child 'shall be to all intents and purposes the child and legal heir of the person so adopting him, or her, entitled to all the rights and privileges, and subject to all the obligations of a child of such person, begotten in lawful wedlock.' But this is far from providing that such adopted child shall be the issue of the adopted, and of his blood and of the blood of his ancestors.

"It was well said in *Upson* v. *Noble*, 35 O. S., 658, that in passing the adopting statute 'the Legislature was dealing with personal rights and duties growing out of the relation of parent and child, by transferring them from the natural to the adopted relation.'

"The statute enables the adopted child to inherit from its adopter, not through him. The statute does not make the adopted child the heir of the ancestors of its adopter, and the right of the adopted child to inhert can not be extended beyond where the statute has fixed it. The statute in this regard must be strictly construed, as held in 35 O. S., 658.

"Adoption does not change the law of descent and distribution as to the property of the ancestors of the adopter. *Quigley* v. *Mitchell*, 41 O. S., 375."

In the case of *Cochrel* v. *Robinson, supra,* the syllabi are apropos:

"1. Section 8598, General Code, authorizing the designation of an heir creates rights of inheritance under the statute of descent and distributon of intestate estates, and such designated heir becomes entitled to the same right of property as if he were a child born in lawful wedlock.

"2. Such person so designated is to be regarded the same as 'issue' of the person so designating, insofar as it involves his right to inherit from the person so designating under the statutes of descent and distribution. ♥

"3. Where a person acquires title to real estate under Section 8574, General Code, and having designated an heir as authorized by Section 8598, General Code, afterwards

dies intestate, seized of said property, the person so designated as heir inherits under the statutes of descent as 'if a child born in lawful wedlock' and the person so designating an heir can not be said to have died 'without issue', within the purview of Section 8577, General Code, providing for inheritance by kindred of a deceased husband or wife of the intestate dying without issue."

On pages 536-537 of the opinion is the following significant language:

"Under the statute as to wills, Section 10581, General Code, requiring blood relationship as a prerequisite to inheritance by representation, clearly the adopted child could not come within its terms. *      *      *

"In the case at bar the inheritance is directly from the designator, and there is no question involved in this case of the right to inherit through the person so designating. The question decided in the *Phillips* v. *McConica* case therefore can not be determinative of the right of the designated heir to inherit from the person so designating him under Section 8598, General Code. *      *      *

In the case of *Albright* v. *Albright, supra,* the syllabus reads:

"A testator devised certain land to his son Isaac Albright in a will which contained the following provision: 'The land above devised to my son Isaac Albright he is to have the use of during his natural life, and at his death to vest in fee simple in his children if he shall have any living. If he shall have no children living at his death then the said lands shall vest in his legal representatives of the Albright family.' Isaac Albright died without children, having adopted a child, Jesse Albright, fifteen years after the death of the testator. In an action for partition and quieting of title, held that the adopted child is not a 'legal representative of the Albright family' and does not take under the will."

This opinion cites leading cases in Ohio, including the cases of: *Smith* v. *Hunter, Surman* v. *Surman,* and *Phillips* v. *McConica, supra.*

We adopt, as applying to the issues herein, the following anaylsis of the court on pp. 677-678.

"We agree with the contention of the defendant in error that Sections 3139 and 3140, Revised Statutes, place the adopted child upon a high plane among the other states of

the Union. Also under this statute, as amended, the child is invested with every legal right, privilege, obligation, and relation in respect to education, maintenance, and rights of inheritance to real estate or distribution of personal estate on the death of the adopting parent or parents as if born to them in lawful wedlock, and this court has recently enforced this statute with respect to such inheritance rights. *Surman* v. *Surman,* 114 O. S., 579, 151 N. E., 708. Sections 3139, 3140 Revised Statutes, however, did not give to an adopted child the same rights of inheritance to real estate or to distribution of personal estate in the property of an ancestor of the adopting parent as if he had been born to the adopting parents in lawful wedlock. This was the specific holding in *Phillips, exr.,* v. *McConica, Guardian,* 59 O. S., 1, 51 N. E., 445, 69 Am. St. Rep., 753, which held in paragraph 4 of the syllabus that 'an adopted child is enabled, by Section 3140, Rev. St., to inherit from its adopter, but not, through him, from his ancestors.

"This decision is still law in this state. Moreover this decision applies directly to the statute under which Jesse Albright was adopted, namely, to Section 3140, Revised Statutes."

The court, in its opinion in the Albright case (pp. 675-676) referring to the case of *Smith* v. *Hunter,* drew the distinction between the two cases in the following language:

"The court below decided that the land passed to Isaac Albright, following the reasoning in the case of *Smith* v. *Hunter, Trustee,* 86 O. S., 106, 99 N. E., 9, a decision of this court which held that where the devise of real estate in a will is to a trustee to pay the income thereof to the testator's daughter for life, with remainder after death of that person to her 'heirs at law,' an adopted child of the testator's daughter takes under the will. However, in the case of *Smith* v. *Hunter,* the will construed employs the word 'heirs at law' instead of the words 'child' or 'children.' Also the Albright will expressly qualifies the devise over to Isaac's 'legal representatives' with the phrase 'of the Albright family.' Now the term 'heir at law, is essentially a legal term, and applies to those persons who have certain legal rights under the statute of descent and distribution."

The syllabi in the case of *Smith et al* v. *Hunter, Trustee, supra,* read:

"1. The rule that in the interpretation of a will the testator must be presumed to have meant what he said requires that a devise of a remainder 'to the heirs at law' of a beneficiary for life be regarded as including an adopted child of the beneficiary, although there was not, when the will was executed, any statute for adoption of children.

"2. In such case it is not required that the testator appears to have had the specific intention that the succession should be to an adopted child of the beneficiary for life if it appears that such child, it having been adopted in pursuance of laws enacted before the succession, is within the terms by which the testator declared his general intention."

The facts in *Smith* v. *Hunter, supra,* are substantially as follows: The testator devised his entire estate to trustees for the benefit of his children, two sons and two daughters. The will directed that the fee simple title of the portions intended for the sons should be conveyed by the trustees to his sons upon their attaining majority. With respect to the various portions intended for the benefit of his daughters, he directed that upon their arrival of age their portion should be set apart but should be still held in trust by the trustees, the rents and profits to be paid to them during life "with fee simple to the heirs of said daughters." One of the daughters, subsequent to her father's death, married and moved to Indiana where she adopted a daughter, one of the parties, under an adoption statute similar to the adoption statute in Ohio, both of which statutes were enacted after the death of the testator.

A careful examination of the briefs of counsel will disclose that plaintiffs in error, the losing parties, cited the cases of *Phillips* v. *McConica,* 59 O. S., 1; *Upson* v. *Noble,* 35 O. S., 655; and *Quigley* v. *Mitchell,* 41 O. S., 375, cases being relied upon by defendant herein. The same line of reasoning in some parts of their brief is adopted by counsel herein.

At page 113 of the opinion is the following language:

"Our attention is, therefore, very properly directed to the ascertainment of the testator's intention. In clear and comprehensive terms he gave his entire estate to trustees with direction that the portions thereof which were intended to be for the benefit of his sons should be delivered and conveyed to them in fee simple upon their attaining their majority, and the portion intended for the benefit of his daughters should be held by the trustees during the life of the daughters, the income only being payable to them, and that upon the death of a daughter the portion which had been so held for her benefit should pass 'to her heirs at law.'"

We read from pp. 115-116:

"Terms limiting the succession to the daughter's heirs at law, who should be of her blood, were omitted by the testator. If the court should supply them it would be amending his will rather than construing it. However confidently we might follow counsel in the conjecture that the testator would have used such terms if he had foreseen all that has now occurred, we should still be admonished that in ascertaining the meaning of a testator it is of first importance to assume that he meant what he said. The meaning of the phrase 'heirs at law' which the testator used to indicate his intention has not been changed since he used it for that purpose."

In the instant case the designating heir Section, R. S. 4182, (now Sec. 8598, General Code), had been in force and effect for twenty-one years at the time the will was executed on December 7, 1875. The original statute has been changed only in minor details, which have not gone to the essence of its meaning. The original law (52 O. L. 78), was passed April 29, 1854. As already stated, in the case of *Smith* v. *Hunter, supra,* neither the state of Indiana nor the state of Ohio had an adoption statute at the time the will was drawn. In fact, the adoption statutes in both states were adopted after the death of the testator. This authorty, therefore, it seems to the court, is controlling.

In the case of *Surman et al* v. *Surman,* 114 O. S., 579, the syllabus reads:

"Under the provisions of Sections 8029 and 8030, Gen-

eral Code, an adopted child is entitled to the same rights as a child begotten in lawful wedlock, including the right of the latter to have a will revoked under the provisions of Section 10561, General Code."

With reference to the case of *Theobald* v. *Fugman,* 64 O. S., 473, *supra,* it is sufficient to quote from the discussion of the same in the case of *Cochrel* v. *Robinson,* 113 O. S., 537-8:

"In *Theobald* v. *Fugman,* 64 O. S., 473, 60 N. E., 606, the facts involved a bequest made by a testatrix in favor of a church, and the testatrix dying within one year the designated heirs sought to bring themselves within the terms of Section 10504, General Code, (Section 5919, Revised Statutes), which provides:

'If a testator dies leaving issue of his body or an adopted child, living * * * and the will of such testator gives * * * the estate * * * or any part thereof to a benevolent, religious * * purpose, * * * such will as to such gift * * * shall be invalid unless it was executed according to law, at least one year prior to the death of the testator.'

"It was held that the legacy was not defeated by the existence of a designated heir. The reasoning of the court appears in the following language on page 483 (60 N. E., 609):

" 'The Legislature thus found, besides blood relations capable of inheriting from an ancestor, two classes having certain statutory rights of inheritance, viz., adopted children and designated heirs. With these two conditions before the law makers they chose to expressly include within the effect of Section 5915 (10504, G. C.), one of those classes and omit the other. If we apply the well known rule of construction *expressio unius est exclusio alterius,* the inevitable result is that *designated heirs* are *within the statute.'*

"In other words, the court was careful to limit the law declared to the facts found in their case and to the specific language of the statute involved. The statute measuring the rights of the designated heir in the Fugman case expressly omitting him it followed that he had no enforceable rights."

Eleanor Bradford Davis, plaintiff herein, as the designated heir at law, does not take the fee simple title in this

property through the declarant and from the declarant's ancestor, but she takes directly from the declarant. The heirs at law were to be determined at the death of the life tenant and were to receive the fee simple, to use the exact language of the will, Item IV, "to be held by her (Eleanora Bradford) during her natural life and at her death to her heirs at law in fee."

We find that the plaintiff herein was the sole heir at law of Eleanora Bradford, and therefore is entitled to the fee simple title under Item IV of said will, unless either of the other defenses should prevail.

Counsel for defendant argues with great force and persuasiveness, however, that the sisters and brother of decedent had a vested remainder in this property, and that they should have come into the enjoyment of the same at the death of James Bradford, on December 25, 1875. The rule in Shelley's case has been abolished by Section 10578, General Code, which reads:

"When lands, tenements, or hereditaments are given by will to a person for his life, and after his death to his heirs in fee, or by words to that effect, the conveyance shall vest an estate for life only in such first taker and a remainder in fee simple in his heirs."

Counsel for defendant cites Blackstone's Commentaries, Vol. 2, Chap. 2, under the heading of "Estates, in possession, remainder and reversion," as follows:

"An estate then in remainder may be defined to be an estate limited to take effect and be enjoyed after another estate is determined, and two rules are laid down to be observed in the creation of remainders.

(1) The first is that there must necessarily be some particular estate precedent to the estate in remainder, which precedent estate is called the *particular* estate; and

(2) The second rule to be observed is that the remainder must commence or pass out of the grantor at the time of the creation of the particular estate; and

(3) A third rule respecting remainders is that the remainder must vest in the grantee during the continuance of the particular estate or *eo instanti* that it determines."

We accept the third rule as stated by Blackstone as applying, that is, that the testator intended to, and did, con-

vey a particular estate to the life tenant, and that upon her death the fee simple vested in the heirs at law, *eo instanti,* contingent upon who the heirs at law were at the time of the death of the life tenant. Otherwise, if the life tenant Eleanora Bradford, had left surviving her issue of her body, such issue would not have inherited.

In the case of *Heath* v. *City of Cleveland,* 114 O. S., 535, syllabus 4 reads:

"An estate in land may be created by will in Ohio that will not vest until the expiration of a definite period, or the happening of some event after the death of the testator, without the creation by will of an intervening estate upon which to rest it."

This principle is applicable herein.

Syllabus 2 of this same authority reads:

"Where in a will, a testator uses the words 'legal heirs,' discriminately, and no intention to use them otherwise is made to appear by the will, interpreted in the light of the circumstances of which the testator was cognizant, a court is not authorized to give such words a meaning other than legal and technical."

As the testator does not appear, in his will, to have used the words "heirs at law" except in the most discriminating manner, it is impossible for us to escape the plain intent and meaning of Section 8598, General Code.

We quote from syllabus 1 of the same authority:

"The language of a will is to be given its ordinary legal significance, unless a contrary intention on the part of the testator appears from the will itself, interpreted in the light of the circumstances of which testator knew."

We have traveled around the circumference of the circle and come back to the fundamental proposition covered by this syllabus to the effect that we must give the language of this will its ordinary legal significance in the absence of any contrary intention on the part of the testator apparent from the will itself.

See also: *Wetson* v. *Wetson,* 38 O. S., 473.

We are, of course, mindful of the authority of *Linton*

v. *Laycock,* 33 O. S., 126, to the effect that the law favors the vesting of an estate.

However, the case of *Barr* v. *Denny,* 79 O. S., 358, distinguishes the case of *Linton* v. *Laycock,* and applies to the instant case. The testator devised the whole of his estate, real and personal to his wife during her natural life, with certain exceptions, and then used the following clause of disposition: "After the death of my wife I desire that the whole of my property, both real and personal, be sold by my executor and after expenses are paid to distribute equally to my legal heirs." The conclusion of syllabus 2 reads:

"The rule that a bequest in the form of a direction to pay, or to pay and divide at a future period vest immediately, if the payment be postponed for the convenience of the fund or estate, or merely to let in some other interest, does not apply. *Linton* v. *Laycock,* 33 O. S., 128, distinguished. *Richey, exr.,* v. *Johnson,* 30 O. S., 288; *Sinton* v. *Boyd,* 19 O. S., 30, and *Hamilton* v. *Rogers,* 38 O. S., 242, approved and followed."

In the case of *Lisle* v. *Miller et al,* 21 C. C. (N.S.), 317, Item 9 of the will was construed, which item reads: "I will to my youngest son, Harvey Lisle, the farm that I now live on, to have and to hold the same during life, then to go to his heirs."

On page 319 we read:

"This brings us to the main and controlling question: Did the estate devised to the 'heirs' of Harvey vest an estate in remainder upon the death of the testator or was it contingent until their 'heirs' were ascertained by Harvey's death?"

"Two conflicting rules of construction are brought in. It is contended, upon the one hand, that the rule favoring vested interests should control in defining and applying the term 'heirs' and, on the other hand, it is asserted that the doctrine of *nemo est haeres viventis* is applicable and that the remainder is, therefore, contingent."

On page 320 appears this language:

"The construction adopted in Massachusetts seems to be in harmony with many of the expressions in the opinion

in *Barr* v. *Denny*, and is supported, we think, by the weight of authority.

"The grantee of Robert John Lisle in our opinion took, therefore, no interest under the will in controversy capable of being asserted in view of the death of his grantor before the estate took effect."

When James Bradford used the following language in his will: "I hereby will and devise to my daughter. Eleanora Bradford, No. 44 5th Street * * * to be held by her during her natural life, and at her death to her heirs at law in fee" the intention of the testator is clear that the fee simple estate should vest in the heirs at law of Eleanora Bradford, to be determined as of the date of her death. Section 10758, General Code, in no way conflicts with this conclusion. We have, of course, scrutinized the entire will most carefully before reaching this conclusion.

## SECOND.

With reference to the second defense herein, the provisions of Section 8598 were complied with, this section having been repeatedly upheld by the foregoing and many other authorities; therefore, the statute not requiring that the life tenant give notice of the proceedings in the Probate Court, designating the plaintiff as heir at law of Eleanora Bradford, and as the provisions of the statute were followed, we do not consider this a valid defense.

## THIRD.

With reference to the third defense to the effect that Section 8598 of the General Code of Ohio, is unconstitutional and void, having come to the conclusion that defendant did not have certain vested property rights under the will of her father, of which she was deprived by the designation of plaintiff as an heir in the proceedings in the Probate Court, and for reasons covered by the court heretofore, we decide against this defense and in favor of the plaintiff, and hold that the section is not contrary to Articles 5 and 14 of the Amendments to the United States Constitution in that it deprives defendant of her property without due process of law.

Of course, we must disregard Article 5 of the Amendments to the Constitution of the United States (cited undoubtedly by inadvertence) as not applicable.

It has been held repeatedly that the first ten amendments to the United States Constitution, constituting the Bill of Rights, apply only to Federal procedure, that is, they have reference to powers exercised by the Government of the United States and not by those of the states:

*Burke* v. *State,* 104 O. S., 220; *Stockton* v. *State,* 106 O. S., 249; *Quimby* v. *Cleveland,* 191 Fed., 68; *Lloyd ex rel* v. *Dollison,* 194 U. S., 445; *Ughbanks* v. *Armstrong, Warden,* 208 U. S., 481.

### FOURTH.

As to the fourth defense, that of *res adjudicata,* it is clamed that by reason of the leasing of this entailed estate, under and by virtue of General Code, Sections 11925-11935, plaintiff is barred or estopped from claiming, as a matter of law, to be the sole heir at law of Eleanora Bradford.

It is urged that if defendant and plaintiff were necessary parties as remaindermen, to enable Eleanora Bradford, in 1907, to obtain a decree to lease the property, and the court found that this lease would do no injury to them as remaindermen, that Eleanora Bradford, in her lifetime, could do nothing to alter and annul that decree by designating an heir at law under Section 8598, General Code.

Counsel for defendant has cited a number of cases, which hold that under a will the adopted child is not included as a child under the will, where the testator is not the adopter, unless a clear intent is shown to the contrary. The Ohio decisions from which we have quoted show the distinction between an action brought by one claiming as an heir at law and as a child. Neither is it necessary for us to assume that plaintiff herein is issue of the body, an adopted child, a legal representative of the Bradford family, nor of the blood of the declarant's father. It is sufficient to say (although there is authority to support the contention that this designated heir is in the same category as issue) that we find strictly that she is and was in the capacity of heir at law, and that she is taking from the

declarant and not through the declarant from the ancestor.

If this were an adversary proceeding in the sense that there was, or could have been, a complete adjudication of the heirs at law, both present and future, then the case of *Bennett* v. *Fleming*, 105 O. S., 352, is applicable in that Eleanora Bradford acted under the doctrine of representation, for all who came after her as her heirs at law. Syllabus 2 reads:

"Persons having a remote, contingent or expectant interest in realty are bound by the judgment rendered in an action concerning the property, although not made parties to the suit, if the holder of the first estate of inheritance is a party. Estates limited over to persons not in being are represented by the living owner of the first estate of inheritance, so that a decree in a suit to which the first holder, a living person, is made a party will conclude the rights of the afterborn remaindermen."

See also: *Judy* v. *Trollinger*, 110 O. S., 576.

If there was no adjudication of the rights of defendants in said action, then the doctrine of *res adjudicata*, of course does not apply. We are inclined to the view that there was no adjudication of the rights of the parties with reference to those interested, or who might become interested, as heirs, that in the action taken to allow the lease of this entailed estate there were included certain parties defendant, necessary, not for the purpose of adjudicating the rights of those parties, but to give them notice of such action. Counsel for plaintiff calls our attention to the fact that among other defendants named therein, are C. Gordon Neff, husband of defendant, Hannah B. Neff, and H. Langdon Laws, son of Lawrence B. Laws, both of whom are still living, and that the court made the same finding as to these defendants as to Florence B. Laws. Of course, it can not be argued that they owned a remainder in this property.

In the case of *Clark* v. *Baranowski*, 111 O. S., 436, Chief Justice Marshall (p. 440) in writing the opinion, says:

"In cases where there is identity of parties and subject-matter, it is the settled law of this state that a former

judgment is conclusive between the parties, not only as to matters actually determined but also as to any other matters which could, under the rules of practice and procedure, have been determined."

In the case of *Southern Pacific R. R. Co.* v. *United States*, 168 U. S., 1, Justice Harlan used the following language:

"A right, question or fact distinctly put in issue and directly determined by a court of competent jurisdiction as a ground of recovery, can not be disputed in a subsequent suit between the parties or their privies; and even if the second suit is for a different cause of action, the right, question or fact so determined, must, as between the same parties or their privies, be taken as conclusively established, so long as the judgment in the first suit remains unmodified."

In arriving at a conclusion against the defendant on the fourth defense, we are bearing carefully in mind the foregoing rules.

We therefore find that the plaintiff herein is the sole heir at law within the meaning of Item IV of the last will and testament of James Bradford.

That the remainder of said property, subject to the life estate devised to Eleanora Bradford did not at once vest in defendant and her sisters and brother, that is, that defendant and others did not have a vested remainder in said property which came into being upon the probate of said will on January 3, 1876.

That the provisions of Section 8598, designating plaintiff herein the sole heir at law of the declarant, were followed and applied in the probate court of Hamilton county.

That Section 8598 of the General Code of Ohio is constitutional and does not, and did not, take away from this defendant any vested property rights under the will of her father.

That neither the plaintiff nor her declarant were estopped by the statutory proceedings brought in this court as a result of which several leases of this entailed estate were executed.

Therefore the demurrer of plaintiff herein must be, and hereby is, sustained.