GRAFTON MAHONEY, APPELLANT, v. THE PAROLE BOARD OF THE STATE OF NEW JERSEY, RESPONDENT.

Argued March 24, 1952—Decided June 26, 1952.

*Mr. Samuel Kagle,* of the Pennsylvania Bar, argued the cause for the appellant (*Mr. Ivan C. Bash,* attorney).

*Mr. Eugene T. Urbaniak,* Deputy Attorney-General, argued the cause for the respondent (*Mr. Theodore D. Parsons,* Attorney-General of New Jersey, attorney).

The opinion of the court was delivered by

BURLING, J.   This is an appeal to the Superior Court, Appellate Division, under *Rule* 3:81–8 (in lieu of the prerogative writ of *certiorari*) from an order of the Parole Board of the State of New Jersey.   The proceeding was brought to obtain a declaration of the constitutionality and effect of paragraph (*c*) of section 12 of *L.* 1948, *c.* 84 (the Parole Act; *N. J. S. A.* 30:4–123.1 *et seq.*) and the validity of a ruling of the Parole Board of the State of New Jersey (hereinafter called the Parole Board) contained in a letter from the chairman of the Parole Board dated January 4, 1952, denying the appellant, Grafton Mahoney (hereinafter called Mahoney) consideration for release on parole.   Although this proceeding was described in the pleadings and briefs as a petition for declaratory judgment under *Rule* 3:81–10, adjectively speaking this appears improper inasmuch as no review is sought of an administrative rule promulgated by a state

administrative agency. Prior to hearing before the Appellate Division this action was brought to this court pursuant to certification allowed on our own motion.

In the study of this case we must first notice that the Constitution of 1844 contained the following provision:

"The governor, or person administering the government, the chancellor, and the six judges of the court of errors and appeals, or a major part of them, of whom the governor, or person adminstering the government, shall be one, may remit fines and forfeitures, and grant pardons, after conviction, in all cases except impeachment." *N. J. Const.* 1844, *Art.* V, *par.* 10.

Whereas under the Constitution of 1947, the general subject is dealt with as follows:

"1. The Governor may grant pardons and reprieves in all cases other than impeachment and treason, and may suspend and remit fines and forfeitures. A commission or other body may be established by law to aid and advise the Governor in the exercise of executive clemency.

2. A system for the granting of parole shall be provided by law." *N. J. Const.* 1947, *Art.* V, *sec.* II, *pars.* 1 and 2.

Pursuant to that authority the Legislature enacted an act in 1948 which took effect May 28, 1948. This established a parole system as distinct from the pardoning power.

It must be observed that the Parole Act gives the power to and imposes the duty upon the Parole Board to classify the offenders upon entry into confinement so as to formulate a time table for consideration for parole of each inmate. No provision is made for hearing upon the classification; in fact, it is expressly provided to the contrary. *L.* 1948, *c.* 84, *sec.* 17; *N. J. S. A.* 30:4–123.17. The wisdom of such a policy is for the Legislature and is not a constitutional requirement.

The agreed statement of facts, filed pursuant to *Rules* 1:2–22 (applicable to the Appellate Division under *Rule* 4:2–6) and 3:81–10 shows: that Mahoney was committed to the New Jersey State Prison at Trenton on April 21, 1937, from the appropriate criminal court in Essex County; that on that same date he was given five consecutive sentences,

four of which had a minimum of three years and a maximum of five years on conviction of charges of breaking and entering, and the fifth having a minimum of two years and a maximum of three years on conviction of the charge of possession of burglar tools; that interrogation of Mahoney by prison authorities, and examination of his fingerprint record submitted to them by the Federal Bureau of Investigation of the United States Department of Justice in Washington, D. C., disclosed that he had the following previous criminal record of convictions and sentences:

As Grafton Mahoney No. A-11391, appellant was convicted of the crime of escape and sentenced to the State Prison in Pittsburgh, Pennsylvania, on May 11, 1921, for a term of 10 years.

As Earl Comer No. 11050, appellant was convicted of the crime of breaking and entering and sentenced on November 4, 1927, for a term of 4 years to the New Jersey Prison at Trenton.

As Grafton Mahoney No. 62797, appellant was convicted of the crime of burglary in a dwelling by night on November 6, 1930, and given a sentence of from 5 to 30 years in the State Prison at Columbus, Ohio.

Mahoney admits that he is the individual so convicted on the dates above specified and was sentenced to and confined in the respective State Prisons at Pittsburgh, Pennsylvania; Trenton, New Jersey; and Columbus, Ohio, all being prior to the sentences now being served by him at State Prison in Trenton. The statement of facts also shows that he was not indicted, tried, convicted or sentenced as an habitual offender at the time of his sentencing in Essex County on April 21, 1937. See *State v. Burns,* 136 *N. J. L.* 601, 603 (*E. & A.* 1948).

The Parole Board, upon a consideration of the foregoing prior convictions of the appellant and the fact of his confinement in the aforementioned State Prisons of Pennsylvania, New Jersey and Ohio, admitted by appellant but not formally proved at a hearing before respondent, determined that he was a fourth offender within contemplation of *Section* 12, *chapter* 84, *L.* 1948 (*N. J. S. A.* 30:4–123.12) and further determined that respondent was precluded from con-

sidering appellant eligible for release on parole prior to the expiration of the maximum of the sentence imposed upon him.

On January 2, 1952, Mahoney addressed a letter to the Parole Board requesting consideration of his case. The Parole Board, by letter of January 4, 1952, addressed to the Principal Keeper of the State Prison, replied as follows:

"The information in the possession of the State Parole Board indicates that Grafton Mahoney is a fourth offender in contemplation of said Section 12, Chapter 84, P. L. 1948, and it is the judgment of this board that it is precluded from considering him as eligible for release on parole until he has served the maximum of the sentence or sentences imposed upon him less credits for work performed.

It is further our understanding that Grafton Mahoney does not deny that he was the individualy convicted on the prior occasions but rather takes the position that his admission thereof is insufficient to permit this board to classify him as such fourth offender under Section 12 aforesaid.

Please inform Grafton Mahoney of this decision of the Parole Board."

Shortly thereafter, Mahoney instituted the present proceeding in the Superior Court, Appellate Division. Prior to hearing there, certification was allowed on this court's own motion, as hereinbefore stated.

The questions involved, asserted by Mahoney, are whether he has been denied equal protection of the laws and due process of the law, under the 14th Amendment to the United States Constitution, by L. 1948, c. 84 (N. J. S. A. 30:4–123.1 et seq.). These necessarily involve construction of various portions of that enactment including paragraph (c) of section 12, under which the action of the Parole Board was effectuated.

Mahoney's first objection is that he is, by the terms of the statute, deprived of equal protection of the laws under the 14th Amendment to the Constitution of the United States. The gist of Mahoney's contention in this respect is that Sec. 12, par. c, of L. 1948, c. 84 (N. J. S. A. 30:4–123.12(c)) is not uniformly applicable to fourth offenders,

in that some fourth offenders are eligible for parole at an earlier period during their confinement than is Mahoney. To support his contentions he argues that fourth offenders sentenced to life imprisonment under the habitual criminals act (*R. S.* 2:103–10 as amended by *L.* 1940, *c.* 219, *sec.* 3; see also *N. J. S.* 2*A*:85–12) are eligible for parole under section 11 of the Parole Act (*N. J. S. A.* 30:4–123.11) after serving 25 years (less good conduct and work credits), and those confined in county penitentiaries serving terms greater than one year are eligible for parole after serving at least one year of such term. The State agrees with Mahoney that the limitations contained in section 12 have no reference to section 11, and argues that those serving life sentences are in a different class because they have no determinable maximum sentence and if released remain on parole for life, whereas those released under section 12 are freed of parole at the expiration of the time of their maximum sentence. As for section 35 of the same statute (*N. J. S. A.* 30:4–123.35), the State contends that prisoners in a county penitentiary constitute a different class from those confined in a state prison for the reason that their crimes are less serious, and that in any event there is no provision in section 35 releasing county prisoners from the restrictions of section 12. In resolving these conflicting arguments and reaching the construction of the enactment the court is required to read the terms used by the Legislature, so as to reach an understanding of the legislative intent and define the same in such a way as to give effect to every word and phrase of the statute. *Hoffman v. Hock,* 8 *N. J.* 397, 406, 409 (1952); *Lynch v. Borough of Edgewater,* 8 *N. J.* 279, 286 (1951). To do this, it seems necessary to set forth in full the language of the pertinent portions of *L.* 1948, *c.* 84 (*N. J. S. A.* 30:4–123.1 *et seq.*) to which our attention has been drawn. They are as follows:

Section 11 (*N. J. S. A.* 30:4–123.11):
"Any prisoner serving a sentence of life shall be eligible for consideration for release on parole after having served twenty-five years

of his sentence, less commutation time for good behavior and time credits earned and allowed by reason of diligent application to work assignments."

Section 12 (*par.* (*c*)) (*N. J. S. A.* 30:4–123.12, *par.* (*c*)):

"The granting of parole, as provided for herein, shall be limited as follows:

※    ※    ※    ※    ※    ※    ※    ※

" (c) Any person sentenced to any penal institution of this State who has previously served all or part of three terms of imprisonment in any penal institution

(1) Of this State, of the United States, or of any State other than this State, or

(2) Of this State and the United States, or of this State, the United States and any other State, or of this State and any other State or States, or

(3) Of the United States and any other State or States, or of more than one State other than this State, shall be deemed to be a fourth offender and upon his incarceration for such fourth or later offense shall be ineligible for parole consideration by the board until he shall have served the maximum sentence imposed upon him for such fourth or later offense less any time earned for diligent performance of work assignments; subject, however, to the provisions of section thirteen of this act. (Note—section 13 was repealed by *L.* 1950, *c.* 315, *sec.* 3).

As used in this section 'penal institution' means and includes the New Jersey State Prison and any other State penal or correctional institution in this State to which offenders are sentenced for fixed terms or fixed minimum and maximum terms and other institutions of like character under the jurisdiction of the United States or of a State or States other than this State."

Section 35 (*N. J. S. A.* 30:4–123.35):

"Notwithstanding any of the provisions of this act, any prisoner in a county penitentiary serving a term having a maximum greater than a year and who has served at least one year of such term shall be permitted to make application to the board for parole. The application shall be on forms to be prescribed and furnished by the board through the warden or chief executive officer of such county penitentiary upon certification that the prisoner desiring to make application is eligible therefor. The board upon receipt of such application may, if the circumstances of the case warrant, grant a parole to any such prisoner in the manner provided for herein, subject to such terms, conditions and limitations as the board may prescribe, and such prisoner while on parole shall be under the supervision of the probation officer of the county from which committed until the maximum term of his sentence has expired."

It is also important to note the following portion of section 17 (*N. J. S. A.* 30:4–123.17):

"*The release of a prisoner on parole shall be solely upon the initiative of the board and no application for parole made by a prisoner, or on his behalf, shall be considered by the board.* The warden, keeper or chief executive officer of any penal or correctional institution referred to in this act shall permit all prisoners to forward uncensored mail to the board. It shall be the duty of the board to maintain a record of the dates upon which each prisoner shall first be eligible for parole consideration as provided in section nine hereof. On or before such date, in the case of each prisoner, it shall further be the duty of the board to consider the case of each such prisoner for parole and to cause to be brought before it all information regarding the prisoners referred to herein. * * *"  (Italics supplied.)

▇▇ Recidivists are treated differently in various jurisdictions in this country and abroad. Three theories have been suggested by text writers and authorities elsewhere as the foundation concepts for these variant practices, namely (a) punishment imposed for a subsequent offense on the consideration of the persistence of the defendant in his criminal course, (b) warning and deterrent to first offenders, and (c) preventive detention or security for the public against the propensities of criminals with repetitive tendencies. See 25 *Am. Jur., Habitual Criminals, Sec.* 1, *p.* 260 and *Sec.* 3, *p.* 261; Norval Morris, The Habitual Criminal (1951). Punishment and deterrents, whether imposed as civil penalties or as sentences following criminal conviction, are designed to the end that offenders will learn that it does not pay to invade the rights of others. With the habitual criminal the police power is exerted primarily to protect the persons and property of citizens of the state because the prisoner's conduct has already demonstrated his inability to learn to accept social and civil responsibility. It is within the power of the State to deprive him of parole. *Ughbanks v. Armstrong,* 208 *U. S.* 481, 28 *S. Ct.* 372, 52 *L. Ed.* 582 (1908). Followed in *Connors v. Illinois,* 260 *U. S.* 695, 43 *S. Ct.* 11, 67 *L. Ed.* 468 (1922) ; *Redwine v. Texas,* 261 *U. S.* 608, 43 *S. Ct.* 433, 67 *L. Ed.* 825 (1923). Compare *White v. Parole Board of State of N. J.,* 17 *N. J. Super.* 580, 586 (*App. Div.* 1952).

With these observations in mind we come to consideration of Mahoney's contention that section 12 of *L*. 1948, *c*. 84 (*N. J. S. A.* 30:4–123.12) *supra*, is not applicable to recidivists serving a life sentence, who, he contends, are eligible for parole consideration under section 11 of *L*. 1948, *c*. 84 (*N. J. S. A.* 30:4–123.11), *supra*. However, since the specific conflict between section 11 and section 12 is not involved in this appeal (Mahoney's last sentence was not one of life imprisonment) it is deemed unnecessary to resolve the same at this time.

The real issue on this phase of the case is, as raised by Mahoney, whether (on the assumption that section 12 is inapplicable to one serving a life sentence and therefore eligible for parole under section 11) he, as a fourth offender *not* sentenced to life imprisonment, is unreasonably discriminated against by the terms of section 12 of the Parole Act. Mahoney's theory is that under section 11 any life prisoner (including a fourth offender serving a life sentence) is eligible for parole after serving 15 years of his life sentence (the net period of confinement if all legal commutation credits were earned and section 11 applied), whereas he, Mahoney, must serve a minimum of 23 years (his total maximum time, 31 years, less commutation credits earned) before becoming eligible for consideration for parole. The State argues that the difference in classification is reasonable because a person sentenced to life imprisonment remains subject to parole conditions after his release for the remainder of his life, and at any time may be incarcerated for violation of parole, whereas one not sentenced to life imprisonment will remain subject to parole conditions (and the risk of reincarceration for violation of parole) after his release only for that period of time which constitutes the balance of the maximum of the sentence or sentences imposed upon him. This is a reasonable basis for the difference of classification asserted as presented on this appeal, and it is unnecessary for us to decide whether section 12 applies to a recidivist whose last sentence was to confinement for life.

With respect to section 35, *supra,* there is no merit in Mahoney's assertion of discrimination. The entire statute must be read to reach a proper construction of this section. Section 35 limits the grant of paroles to applications where "the circumstances of the case warrant" and "in the manner provided for herein." These provisions invoke section 12 and preclude parole under section 35 except as limited in section 12. Further, the obvious purpose of section 35 is solely to permit prisoners in a county penitentiary to *apply* for parole, a privilege denied to prisoners in the State Prison and other correctional institutions by section 17 of the same act (quoted *ante*).

Mahoney's second question involved is that he was denied due process of the law by reason of the Parole Board's refusal to accord him a hearing upon the question of his prior convictions. The Parole Board's refusal to accord him such a hearing was effected pursuant to the statutory direction contained in *section* 17 of *c.* 84, *L.* 1948 (*N. J. S. A.* 30:4–123.17), *supra,* namely that release on parole shall be solely on the initiative of the Parole Board and "no application * * * by a prisoner * * * shall be considered" (except under section 35 of the same act, *supra*). Paroles are favors granted by the State to convicted criminals and it may attach such conditions to the application for or the granting of the favor as it may deem proper, or may deny the favor completely. The procedure to ascertain the fact as well as the kind of evidence upon which to base its determination on advisability of parole is a matter of state policy exclusively for the State to decide. "It is not bound to give the convict a hearing upon the question of prior conviction, and a failure to give it violates no provision of the Federal Constitution." *Ughbanks v. Armstrong, supra* [208 *U. S.* 481, 28 *S. Ct.* 374]; *White v. Parole Board of State of N. J., supra.*

For the reasons stated, we do find and declare that *L.* 1948, *c.* 84, *Sec.* 12, *par.* (*c*) (*N. J. S. A.* 30:123.12(*c*)), does not violate the 14th Amendment to the Federal Constitution and that the action of the Parole Board of the State of New

Jersey in classifying Grafton Mahoney as a fourth offender and ineligible for parole at the time of his application therefor was proper and should be and is hereby affirmed. Mahoney's prayer for relief in the nature of a direction to the Parole Board of the State of New Jersey to require the latter to give him a hearing on parole eligibility is denied. Costs shall not be taxed against the appellant.

HEHER, J. (dissenting). The State Constitution of 1947 empowers the Governor to grant pardons and reprieves in all cases other than impeachment and treason, and to suspend and remit fines and forfeitures, and to establish a commission or other body to aid and advise the Governor in the exercise of executive clemency, and directs that "A system for the granting of parole shall be provided by law." *Article V, Section II, paragraphs* 1 and 2.

It is of the essence of this constitutional direction for the establishment of a parole system that the exercise of the power be free from unjust and invidious discriminations. The principle of the equal protection of the laws is implicit in the provision. There can be no arbitrary classification of prisoners for parole eligibility. The Constitution contemplates a fair and reasonable exercise of the power in the service of the general parole policy. The Legislature necessarily has a great latitude of discretion in classifying prisoners for parole consideration. But the power is not absolute, its exercise is contained by the dictates of fairness and reasonableness and the equality of right and privilege—the antithesis of arbitrary action—that is basic in our constitutional system. Compare *Finley v. California,* 222 *U. S.* 28, 32 *S. Ct.* 13, 56 *L. Ed.* 75 (1911); *Carlesi v. New York,* 233 *U. S.* 51, 34 *S. Ct.* 576, 58 *L. Ed.* 843 (1914).

Here, the statute makes an arbitrary distinction between fourth offenders who are life prisoners and those who are not that bears no reasonable relation to the policy of the law. The fourth offender undergoing a sentence of life imprisonment, whether for murder in the first degree or as an habitual

criminal under *R. S.* 2:103–10, as amended (see, also, *N. J. S.* 2A:85–12) becomes eligible for parole consideration when he has served 25 years of his sentence less commutation time for good behavior and work credits, making possible a reduction of the minimum period to 14 years, 7 months and 23 days, while a fourth offender not under a life sentence is obliged to serve his full maximum sentence, even although it far exceeds the minimum period which qualifies the fourth offender under a life sentence for parole consideration. In the case now before us the maximum sentence less earned commutation time is 23 years; in some cases the fourth offender's maximum sentence goes beyond the normal life span.

It has been said that release on parole is a matter of grace. It is rather a discretionary function controlled by well-defined considerations concerned with the welfare of society and the interest of the prisoner which need not be elaborated here. Certainly, eligibility for parole consideration is not to be arbitrarily granted in one case and refused in another in like circumstances. Unequal operation of the law would run counter to the genius and spirit of the Constitution. The Constitution is not to be read as conferring absolute power—a wholly unregulated discretion that would admit of partiality and inequality in the extension of paroles. The statement of the affirmative of this proposition carries its own refutation. The use of the term "system" in the grant of power bespeaks its essential quality and limitations. The principle finds expression in the Fourteenth Amendment to the Federal Constitution. *Carlesi v. New York,* cited *supra.* It is expounded in *Smith v. Board of Examiners,* 85 *N. J. L.* 46 (*Sup. Ct.* 1913).

It is not an answer to say that the released life prisoner is subject to parole supervision so long as life lasts, unless clemency be extended, while a fourth offender discharged from imprisonment upon completion of his maximum sentence is not. This I consider an artificial and illusory distinction that does not take into account the policy and purpose

of the parole law, *i. e.*, release from imprisonment before the maximum sentence is served. Parole is in mitigation of the punishment, so much so that retroactive laws granting more favorable parole terms to the prisoner are not *ex post facto.* *Lindsey v. Washington,* 301 *U. S.* 397, 57 *S. Ct.* 797, 81 *L. Ed.* 1182 (1937); *People v. Adams,* 274 *N. Y.* 447, 9 *N. E. 2d* 46 (*Ct. App.* 1937); *Andrus v. McCauley,* 21 *Fed. Supp.* 70 (*D. C. Wash.* 1926). The continuous quest by prisoners for the advancement of the date of parole eligibility is a practical demonstration of the fact.

I would reverse the judgment.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN —6.

*For reversal*—Justice HEHER—1.