Raymond Edwin POE, K–1106,
Plaintiff,

v.

Stewart WERNER, Commissioner of the
Bureau of Corrections of Pennsyl-
vania, et al., Defendants.

Civ. No. 74–53.

United States District Court,
M. D. Pennsylvania.

Dec. 2, 1974.

Jack J. Levine, Philadelphia, Pa., for plaintiff.

J. Andrew Smyser, Deputy Atty. Gen., Israel Packel, Atty. Gen., Pennsylvania Dept. of Justice, Harrisburg, Pa., for defendants.

Before ROSENN, Circuit Judge, SHERIDAN, Chief District Judge, and MUIR, District Judge.

## MEMORANDUM

SHERIDAN, Chief District Judge.

Plaintiff, Raymond Edwin Poe, presently an inmate at the State Correctional Institution at Rockview, Bellefonte, Pennsylvania, brought this action under the Civil Rights Act, 42 U.S.C.A. §§ 1983–1985, seeking injunctive relief against the defendants, Stewart Werner, Commissioner of the Bureau of Corrections of Pennsylvania and Glen R. Jeffes, Superintendent of the State Correctional Institution at Dallas. Federal jurisdiction is invoked under 28 U.S.C.A. § 1343. Specifically, plaintiff requests the court to enjoin the enforcement of the hair length regulation for inmates promulgated by the Pennsylvania Bureau of Corrections and the enforcement of the institutional policy at Dallas requiring supervised showers for homosexuals.

Subsequent to the filing of the complaint, plaintiff was transferred from the State Correctional Institution at Dallas to Rockview, where plaintiff's showers are not supervised. For this reason plaintiff's request for injunctive relief with respect to the institutional policy at Dallas which requires supervised showers for homosexuals was dismissed as moot.

There remains plaintiff's contention that the hair length regulation of the Bureau of Corrections is unconstitutional. Since plaintiff seeks injunctive relief restraining state officials from the enforcement, operation and execution of a statewide prison regulation on the ground of its unconstitutionality, a three-judge court has been convened pursuant to 28 U.S.C.A. § 2281. King v. Smith, 1968, 392 U.S. 309, 311–312 & n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118; Sands v. Wainwright, 5 Cir. (en banc) 1973, 491 F.2d 417; see Procunier v. Martinez, 1974, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

The Bureau's regulation with respect to hair length of prisoners provides:

"I. PURPOSE

The purpose of this directive is to establish guidelines for resident grooming that permit individuality and are consistent with practices in the community.

"II. MALE HAIR STYLES

Hair that does not fall below the top of the collar in length, a beard or goatee no longer than three inches, a mustache and sideburns shall be permitted provided they are neat and clean.

"III. FEMALE GROOMING

A. Any feminine hair style shall be permitted.

B. Unless otherwise determined by the Superintendent of the State Correctional Institution at Muncy, hair dyeing and tinting be done only by the institutional beautician.

C. The use of all cosmetics shall be permitted in good taste."

The institution has interpreted this regulation as to permit inmates to wear their hair to the level of the collar on their uniform shirts, which have a standard sportshirt type of collar. Poe, however, wants to wear his hair at shoulder length. He contends that the regulation violates the due process clause and the equal protection clause of the fourteenth amendment.

Whether the right to select the length of one's hair is a constitutionally protected right is a question which has sharply divided the lower federal courts.[1] There is a similar lack of agreement among those courts that have recognized such a constitutional right as to its precise nature—that is, which provisions of the Constitution protect it.[2] In addition, those courts which have found a constitutionally protected right have differed as to what label to choose for it—that is, whether the right is "fundamental," "substantial," "basic" or simply a "right"—and consequently have differed on what kind of showing the government must make in order to override the protected constitutional interest.[3]

In Stull v. School Board of Western Beaver Junior-Senior High School, 3 Cir. 1972, 459 F.2d 339, the Court of Appeals for the Third Circuit held that the governance of the length and style of one's hair is implicit in the liberty assurance of the due process clause of the fourteenth amendment. However, the court asserted that personal freedoms are not absolute and, reaffirming the test previously established in Gere v. Stanley, 3 Cir. 1971, 453 F.2d 205, aff'g M.D.Pa.1970, 320 F.Supp. 852, held that a court must assess the reasonableness of the hair regulation in relation to its subject, to reconcile the protected right with the legitimate interests of the community. As stated in Gere v. Stanley, supra, wherein the court held that the evidence presented by the school authorities constituted an adequate justification of a student hair regulation, "the liberty guaranteed by the Fourteenth Amendment implies absence of arbitrary interferences, but not immunity from reasonable regulations." 453 F.2d at 209.

Given the conflict among the federal courts on the constitutional issues involved, initially the court is confronted with the question of whether a three-judge court is bound to follow the decisions of the court of appeals for the circuit in which it is located, or whether it is bound only by decisions of the Supreme Court, to which a right of direct

---

1. *Compare* Freeman v. Flake, 10 Cir. 1971, 448 F.2d 258; King v. Saddleback Junior College District, 9 Cir. 1971, 445 F.2d 932; Jackson v. Dorrier, 6 Cir. 1970, 424 F.2d 213, cert. denied, 1970, 400 U.S. 850, 91 S. Ct. 55, 27 L.Ed.2d 88; Ferrell v. Dallas Independent School District, 5 Cir. 1968, 392 F.2d 697, cert. denied, 1968, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125; *with* Stull v. School Board of Western Beaver Junior-Senior High School, 3 Cir. 1972, 459 F.2d 339; Massie v. Henry, 4 Cir. 1972, 455 F.2d 779; Bishop v. Colaw, 8 Cir. 1971, 450 F.2d 1069; Breen v. Kahl, 7 Cir. 1969, 419 F.2d 1034, cert. denied, 1970, 398 U.S. 937, 90 S. Ct. 1836, 26 L.Ed.2d 268; Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281. In addition, *see* Justice Black's memorandum in Karr v. Schmidt, 1971, 401 U.S. 1201, 91 S. Ct. 592, 27 L.Ed.2d 797, in which he refused to vacate the stay of a district court's order enjoining public school officials from enforcing student hair length regulations and expressed the view that the federal courts have no constitutional power to interfere with hair regulations promulgated by a public school system. *Compare* Justice Douglas' memorandum in Olff v. East Side Union High School District, 1972, 404 U.S. 1042, 92 S.Ct. 703, 30 L.Ed.2d 736, dissenting from the denial of certiorari and expressing

the view school hair length regulations are clearly unconstitutional.

2. The courts have adopted the following conceptual approaches with respect to the basis for a constitutionally protected right to select the length and style of one's hair: that the right is implicit in the liberty assurance of the due process clause of the fourteenth amendment; that the right falls within the penumbras of the first amendment; that it is included in the ninth amendment as an additional fundamental right which exists alongside those basic rights specifically mentioned in the first eight amendments; that the right is encompassed within the constitutional right of privacy, which includes a right of personality or individuality, that is imbedded in the penumbras of the provisions of the Bill of Rights, as established in Griswold v. State of Connecticut, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510.

3. *Compare, e.g.,* Breen v. Kahl, 7 Cir. 1969, 419 F.2d 1034, cert. denied, 1970, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268, *with* Richards v. Thurston, 1 Cir. 1970, 424 F.2d 1281, and these cases *with* Stevenson v. Board of Education, 5 Cir. 1970, 426 F.2d 1154, cert. denied, 1970, 400 U.S. 957, 91 S. Ct. 355, 27 L.Ed.2d 265.

appeal exists. There is a difference of opinion among the federal courts on this question.[4] Given our resolution of the instant case, we need not decide this issue. Nor do we decide whether there is a constitutional right to govern one's own hair length.

■ Assuming *arguendo* that the governance of the length and style of one's hair is a constitutionally protected right, the right is not inflexible or unaffected by conditions and circumstances under which it is asserted. When the right is invoked by a prisoner confined in a penal institution under sentence, a court must assess the reasonableness of the prison regulation in relation to its purpose and reconcile the arguably protected constitutional right with the legitimate penal interests of the state. One of the primary functions of government is the preservation of societal order through the enforcement of criminal law, and the maintenance of penal institutions is an essential part of that task. The identifiable governmental interests at stake in this task are the preservation of internal order and discipline, the maintenance of institutional security, and the rehabilitation of prisoners. Procunier v. Martinez, 1974, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224.

The defendant has presented evidence that the prison hair regulation furthers all three of these governmental interests. In addition, evidence was presented that the regulation promotes the hygiene of the residents. Long hair in a closed male institution impedes the control of homosexuality and invites the attentions and sexual attacks of homosexual predators in the institution "because they appear to the predators as very feminine individuals."[5] It is a disruptive factor that interferes with the maintenance of peaceful relations among the prison's inmates. Long hair provides a place for the concealment of contraband, a concern heightened by the fact that the prisoners work outdoors and have open contact visiting. It also impairs the ability of prison officials to identify inmates from their institutional photographs. Finally, the hair regulation can be viewed as furthering the rehabilitative function of the prison of restoring in the inmate population that minimal degree of personal discipline that is essential to a safe and orderly society. The normal activity to which a prison is committed —the involuntary confinement and isolation of large numbers of people, some of whom have demonstrated a capacity for violence—necessarily requires that considerable attention be devoted to the maintenance of institutional security and internal order and discipline. The court holds that the evidence presented by the defendant, particularly with respect to contraband, homosexuality and prisoner hygiene, are considerations sufficiently paramount in the administration of the prison to justify the hair regulation.

While the federal courts have differed sharply on the issue of the constitutionality of public school hair regulations, the courts have consistently held prison hair regulations with respect to incarcerated inmates to be constitutionally valid. Rinehart v. Brewer, 8 Cir. 1974, 491 F.2d 705; Daugherty v. Reagan, 9 Cir. 1971, 446 F.2d 75; Blake v. Pryse, 8 Cir. 1971, 444 F.2d 218; Brooks v. Wainwright, 5 Cir. 1970, 428 F.2d 652; Brown v. Wainwright, 5 Cir. 1970, 419 F.2d 1376; United States ex rel. Goings v. Aaron, D.Minn.1972, 350 F.Supp. 1; Williams v. Batton, E.D.N.C.1972, 342 F.Supp. 1110. Thus, in Rinehart v. Brewer, 8 Cir. 1974, 491 F.2d 705, the Court of Appeals for the Eighth Circuit,

4. *Compare* Jehovah's Witnesses in State of Washington v. King County Hospital, W.D. Wash.1967, 278 F.Supp. 488, aff'd, 1968, 390 U.S. 598, 88 S.Ct. 1260, 20 L.Ed.2d 158 (three-judge court is not bound by any judicial decisions but those of the United States Supreme Court) *with* Lewis v. Rockefeller, 2 Cir. 1970, 431 F.2d 368 (three-judge court, if convened, would be bound by decisions of the court of appeals for the circuit where it sits).

5. Plaintiff is an avowed homosexual.

which previously had held that a student possessed a constitutionally protected right to govern his personal appearance and that a high school dress code regulating hair length and style was unconstitutional, Bishop v. Colaw, 8 Cir. 1971, 450 F.2d 1069, nevertheless upheld the validity of a prisoner hair length regulation, reasoning as follows:

"The constitutional considerations presented by a public school hair regulation are qualitatively different from those involved in an otherwise similar prison regulation. Even if one ignores the prison administrator's substantially greater concern over identification, security against contraband, and maintenance of peaceful relations among the institution's patrons, a warden's interest in hair length regulation is readily distinguishable from that of the public school principal. The primary function of the public school is to educate its students. Any concern over the maintenance of discipline is secondary to the purpose of education. The primary function of the prison, however, is to restore in the inmate population that minimal degree of personal discipline that is essential to a safe and orderly society. On the basis of this difference alone we feel Bishop v. Colaw is distinguishable and *Ralls* [Ralls v. Wolfe, 448 F.2d 778 (8th Cir.)] and *Blake* are controlling. As for plaintiff's contention that we have abandoned our restrained approach to review of matters involving prison administration, we disagree. We are, of course, always sensitive to any deprivation of a prisoner's fundamental constitutional rights. Nevertheless, we also remain highly deferential to the discretion of the prison administrator where, as here, a reasonable disciplinary regulation is enforced with at least the minimal procedural fairness required by the constitution." 491 F.2d at 706.

■ Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights of the ordinary citizen, a retraction justified by the considerations underlying our penal system. Pell v. Procunier, 1974, 417 U.S. 817, 94 S.Ct. 2800, 41 L. Ed.2d 495; Wolff v. McDonald, 1974, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935; Price v. Johnston, 1948, 334 U.S. 266, 285, 68 S.Ct. 1049, 92 L.Ed. 1356. Some deprivations are a necessary and expected result of being an inmate of a penal institution, which must provide for the custody, discipline and rehabilitation of those who have violated the law. The task of determining the rights and deprivations of state prisoners falls principally upon the prison authorities, whose judgment in the exercise of this important responsibility the federal courts will not ordinarily question. Gray v. Creamer, 3 Cir. 1972, 465 F.2d 179. A wide latitude in anticipating the probable consequences of allowing certain conduct or practices in a prison environment is essential to the proper discharge of the prison administrator's duty. *See* Procunier v. Martinez, 1974, 416 U.S. 396, 414, 94 S.Ct. 1800, 40 L. Ed.2d 224; Gittlemacker v. Prasse, 3 Cir. 1970, 428 F.2d 1, 4. We agree with the Court of Appeals for the Ninth Circuit that "[w]hile little vestige remains of the old concept that a convict is civilly dead, we have not reached the point where we second guess the state authorities on the length of prisoners' hair." Daugherty v. Reagan, 9 Cir. 1971, 446 F.2d 75.

■ For the foregoing reasons, we hold that the prisoner hair regulation in the instant case furthers the substantial penal interests of security, order, prisoner hygiene and rehabilitation and that these governmental interests outweigh the arguably protected constitutional right of personal governance of hair length and style.

There remains plaintiff's contention that the inmate hair regulation violates the equal protection clause of the fourteenth amendment because it does not restrict feminine hair length or style. The equal protection clause requires that persons similarly circumstanced be

treated the same by the law unless there is a legitimate basis for treating them differently. In deciding whether state action unconstitutionally classifies, the Supreme Court has articulated two essentially distinct tests for deciding equal protection claims. *See, e. g.,* San Antonio Independent School District v. Rodriguez, 1973, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16. The traditional test requires that state action must be upheld if there is a reasonable basis for the classification and the basis is rationally related to the achievement of a legitimate state interest. San Antonio Independent School District v. Rodriguez, supra; Dandridge v. Williams, 1970, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; McDonald v. Board of Election Commissioners of Chicago, 1969, 394 U.S. 802, 89 S.Ct. 1404, 22 L.Ed.2d 739; Morey v. Doud, 1957, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485. If, however, the state action affects a "fundamental" right or creates a "suspect" grouping, the state action will be carefully and meticulously scrutinized in search of the requisite compelling state interest. Dunn v. Blumstein, 1972, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274; Graham v. Richardson, 1971, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534; Cipriano v. City of Houma, 1969, 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647; Shapiro v. Thompson, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; Skinner v. Oklahoma, 1942, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655.

The prisoner hair regulation does not impinge on the exercise of a fundamental right, and no suspect classification is created. We do not believe that the hair regulation should be subject to the more stringent standard but rather is constitutional if the differing treatment of men and women inmates rests upon some ground of difference actually having a reasonable and substantial relation to the legitimate object of the regulation. Royster Guano Co. v. Virginia, 1919, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989. This is the test the Supreme Court has utilized in recent cases involving equal protection challenges to government enactments providing that different treatment be accorded individuals on the basis of their sex. Kahn v. Shevin, 1974, 416 U.S. 351, 352, 94 S.Ct. 1734, 40 L.Ed.2d 189; Geduldig v. Aiello, 1974, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256; Reed v. Reed, 1971, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225; *but cf.* Frontiero v. Richardson, 1973, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (plurality opinion).[6]

This test appears to be an alternative to both traditional rational basis analysis and strict scrutiny. When utilizing the compelling governmental interest test, a court not only requires that a classification further the legislative goals but also examines the legislative purposes often finding them insufficiently important to justify the suspect classification or the impingement of the fundamental right. Thus, under strict scrutiny analysis, some classifications, which are rationally related to the asserted state interest, would still be unconstitutional because the governmental

---

6. In Muller v. Oregon, 1908, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551, the Court established that women could constitutionally be treated differently from men. In Goesaert v. Cleary, 1948, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163, the Court sustained a Michigan statute limiting the bartending profession to men except for women who were wives or daughters of a male bar owner on the ground the legislation was rationally related to the state's legitimate interest in regulation of the liquor trade and the legitimate goal of avoiding "moral and social problems" surrounding employment of women in bars. The Court, in Hoyt v. Florida, 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118, held that a woman criminal defendant was not denied equal protection of the law by a Florida statute exempting women from jury service. These cases epitomize the traditional rational basis test in equal protection analysis. While the Court has never explicitly overruled *Muller*, *Goesaert* and *Hoyt*, it appears that the rationale of those cases has been undermined by *Reed*, *Frontiero*, *Kahn* and *Geduldig* in which the Court scrutinized more closely the relationship between the sex classification and the purpose of the legislative enactment of which it was a part.

interest is not compelling. When a court applies the traditional reasonable basis analysis, it searches for legislative goals which arguably justify the classification established, and it does not carefully examine whether these goals are actually furthered. In contrast to the reasonable basis and strict scrutiny approaches, the analysis employed by the Supreme Court in recent sex classification cases indicates that the Court will uphold a state enactment so long as there is actual proof that the asserted state interest is furthered.[7] Kahn v. Shevin, supra; Geduldig v. Aiello, supra; Reed v. Reed, supra; *but cf.* Frontiero v. Richardson, supra. This test imposes on the government a heavier burden with respect to justification of the classification than the traditional reasonable basis test, since the state must produce evidence that the classification actually furthers the asserted state purposes, but the state need not show a compelling governmental interest. Therefore, in the instant case the hair regulation is not violative of equal protection so long as the sex classification rests upon some ground of difference which bears a reasonable and substantial relation to the penal interests the hair regulation furthers.

Unlike the prisons in which male inmates are incarcerated, the sole state women's correctional institution is a minimum security facility which has no strict limitations on permissible items of personal property and no strict regimentation of conduct or personal appearance. It is an open institution where the women inmates live in cottages. The nature of the prison environment at the women's facility differs significantly from that existing at the men's penal institutions and hence different regulations are constitutionally permissible. *See* Wark v. Robbins, 1 Cir. 1972, 458 F.2d 1295 (upholding differential penalties for men and women who escape from prison). Furthermore, since men and women differ physically and psychologically, the court believes that prison administrators are free to give differential treatment to male and female inmates based on perceived natural and practical differences. In the instant case the penal authorities could reasonably conclude that the greater aggressiveness and disposition toward violent action frequently displayed by male prisoners makes institutional security, maintenance of internal discipline and prevention of homosexual attacks—penal goals which the hair regulation furthers —a much greater problem in the men's prisons than in the women's correctional institution. Likewise the greater importance of personal appearance to women than men largely eliminates any hygienic problems with respect to long hair of female inmates. In short, there is a validating relationship between the varying behavioral patterns of the two sexes and the regulatory distinction between the

7. In Healy v. Edwards, E.D.La.1973, 363 F. Supp. 1110, prob. juris. noted, 1974, 415 U. S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465, a three-judge district court held unconstitutional provisions of the Louisiana Constitution and statute which exempt all women from jury service unless they volunteer to serve. Contemporaneously, the Supreme Court of Louisiana, in State v. Taylor, 1973, La., 282 So.2d 491, prob. juris. noted, 1974, 415 U.S. 911, 94 S.Ct. 1405, 39 L.Ed.2d 465, sustained the constitutional provision declared invalid in *Healy* as well as a similar statutory provision, affirming the criminal conviction of a male defendant and holding that the trial court judge had correctly denied a motion to quash the petit jury venire because of the exclusion of women. Having set both *Healy* and *Taylor* for oral argument in tandem, 43 U.S.L.W. 3180, the United States Supreme Court will have an opportunity to elucidate the degree of judicial scrutiny applicable to sex classifications. The Court is presented with a similar opportunity in Ballard v. Laird, S.D.Cal.1973, 360 F. Supp. 643, prob. juris. noted sub nom. Schlesinger v. Ballard, 1974, 415 U.S. 912, 94 S.Ct. 1405, 39 L.Ed.2d 465, which raises the issue of whether male naval officers are denied equal protection and due process by a statutory scheme that results in mandatory discharge of male naval officers who have been twice passed over for promotion, but that gives female officers a guaranteed tenure of thirteen years commissioned service before mandatory discharge.

sexes with respect to hair length. Thus we do not believe that the gender classification in the instant case is arbitrary; rather it rests on real and substantial differences which bear a just and reasonable relation to the purposes of the regulation. Unlike the men's prisons, institutional security, contraband, homosexual attacks and internal discipline are not major problems at the women's institution. The court holds that the sex classification bears a rational relationship to the legitimate penal interests which the hair regulation advances, and hence the regulation is not violative of equal protection. *See* New Rider v. Board of Education of Independent School District No. 1, 10 Cir. 1973, 480 F.2d 693; King v. Saddleback Junior College District, 9 Cir. 1971, 445 F.2d 932, 939. *See also* Ughbanks v. Armstrong, 1908, 208 U.S. 481, 28 S.Ct. 372, 52 L.Ed. 582; Sas v. Maryland, D.Md. 1969, 295 F.Supp. 389, 418, 419, aff'd sub nom. Tippett v. State of Maryland, 4 Cir. 1971, 436 F.2d 1153.

Plaintiff's request for injunctive relief will be denied. The foregoing shall constitute the court's findings of fact and conclusions of law.

Circuit Judge ROSENN joins in that part of this opinion which holds that the hair regulation does not violate the due process clause. He concurs in the balance of the opinion.

ROSENN, Circuit Judge (concurring).

I join in that part of the opinion of Judge Sheridan which holds that the hair length regulation does not violate the due process clause. However, I differ in my approach to the equal protection clause claim.

As Judge Sheridan's opinion correctly observes, the level of judicial scrutiny necessitated by an equal protection claim depends on two factors: the nature of the constitutional right affected and the nature of the classification created by the state action. He assumes that the same equal protection test should be used within and without the prison walls. I disagree with this assumption because I believe that the equal protection test normally used to judge state action which impinges upon a fundamental right is not appropriate in a prison environment. I do believe, however, that the strict equal protection test used to judge state action which creates a suspect class is appropriate in a prison setting.

The question whether the right to control one's hairstyle is constitutionally protected has divided courts of appeals confronted with the issue. *See* note 1 of Judge Sheridan's opinion. This division is perhaps best illustrated by the Court of Appeals for the Fifth Circuit in Karr v. Schmidt, 460 F.2d 609 (5th Cir.) (en banc), cert. denied, 409 U.S. 989, 93 S. Ct. 307, 34 L.Ed.2d 256 (1972), in which the court, by a 7 and 1 concurring to 7 vote held that the right is not cognizable in a federal court. Incredible as it may appear, a further division exists among the courts, which have considered the right to be constitutionally protected, as to what is the precise nature of the right.

One line of cases views the right as derived from the right of privacy found within either the penumbra of the Bill of Rights or within the ninth amendment. Therefore, these courts view the right as fundamental.

> The right to wear one's hair at any length or in any desired manner is an ingredient of personal freedom protected by the United States Constitution. * * * Whether this right is designated as within the "penumbras" of the first amendment freedom of speech, * * * or as encompassed within the ninth amendment as an "additional right[s] * * * which exist alongside those fundamental rights specifically mentioned in the first eight constitutional amendments," * * * it clearly exists and is applicable to the states through the due process clause of the fourteenth amendment.

To limit or curtail this or any other fundamental right, the state has a "substantial burden of justification." Breen v. Kahl, 419 F.2d 1034, 1036 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970).

A second line of cases views the right as part of the sphere of personal liberty protected by the due process clause. This line does not see the right as fundamental.

> [W]e believe that the Due Process Clause of the Fourteenth Amendment establishes a sphere of personal liberty for every individual, subject to reasonable intrusions by the state in furtherance of legitimate state interests.
>
> \* \* \* \* \* \*
>
> We do not say that the governance of the length and style of one's hair is necessarily so fundamental as those substantive rights already found implicit in the "liberty" assurance of the Due Process Clause, requiring a "compelling" showing by the state before it may be impaired.

Richards v. Thurston, 424 F.2d 1281, 1284 (1st Cir. 1970).

Still a third line of cases views the differing formulations of the above cases as mere semantics, and considers the nature of the right immaterial.

> Some have referred to the right as "fundamental," others as "substantial," others as "basic," and still others as simply a "right." . . . A close reading of these cases reveals, however, that the differences in approach are more semantic than real. The common theme underlying decisions striking down hairstyle regulations is that the Constitution guarantees rights other than those specifically enumerated, and that the right to govern one's personal appearance is one of those guaranteed rights.

Bishop v. Colaw, 450 F.2d 1069, 1075 (8th Cir. 1971).[1]

This division is also reflected in the Third Circuit. In Gere v. Stanley, 453 F.2d 205 (3d Cir. 1971), the court assumed *arguendo* that Gere had the right to wear long hair, that "if a right to long hair *vis-a-vis* the State exists under the Constitution, it must arise under the 'liberty' and 'due process' portions of the Fourteenth Amendment," *id.* at 207 n. 4, and that the right was subject to "reasonable regulations" by the state. *Id.* at 209.

Then, in Stull v. School Board of Western Beaver Junior-Senior High School, 459 F.2d 339 (3d Cir. 1972), the court seemed to simultaneously adopt the views of all three lines of cases. First, it agreed with Bishop v. Colaw, *supra*, that "the differences to the above mentioned conceptual approaches to the problem are in considerable measure semantic and that there is indeed a common theme in all of these cases." *Id.* at 347. It then agreed with the First Circuit and held that

> the governance of the length and style of one's hair is implicit in the liberty assurance of the Due Process Clause of the Fourteenth Amendment. It may well be that this formulation in effect adopts the concept of penumbral rights; yet, we are inclined to agree with the view of the *Richards* court that in the absence of further guidance from the Supreme Court, we ought not to expand the Ninth Amendment beyond the notions applied to the right of (marital) privacy as expressed in *Griswold.*

*Id.* at 347.

However, the court, in discussing whether a hair style regulation was reasonable in shop classes, suggested that the state must use less restrictive alternatives in regulating the length of hair.

> For instance, perhaps nets or head bands could provide the requisite safety in such classes, or other measures could be adopted which are designed

---

1. *Accord*, Massie v. Henry, 455 F.2d 779 (4th Cir. 1972). In addition, *Massie* views

the right as "having equal protection clause considerations." *Id.* at 783.

to assure that their legitimate purpose —safety—is accomplished, as long as they are as limited as possible so as not to overly burden the exercise of a protected right.

*Id.* at 347. The less restrictive alternative test is one that is used in assessing the validity of regulations affecting fundamental rights.

I do not believe that it is necessary to resolve this question at this time. Assuming *arguendo* that the right to control one's hairstyle is a fundamental constitutional right, I do not believe that the strict equal protection test should be used to judge a claim in a prison setting that a state regulation affects a fundamental right. Strict judicial scrutiny affords little if any leeway in the state's treatment of fundamental rights. As recently noted in Procunier v. Martinez, 416 U.S. 396, 404–405, 94 S.Ct. 1800, 1807, 40 L.Ed.2d 224 (1974):

> Traditionally, federal courts have adopted a broad hands-off attitude toward problems of prison administration. . . . [T]his attitude springs from complementary perceptions about the nature of the problems and the efficacy of judicial intervention. Prison administrators are responsible for maintaining internal order and discipline, for securing their institutions against unauthorized access or escape, and for rehabilitating, to the extent that human nature and inadequate resources allow, the inmates placed in their custody. The Herculean obstacles to effective discharge of these duties are too apparent to warrant explication. Suffice it to say that the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree. Most require expertise, comprehensive planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. For all of those reasons, courts are ill-equipped to deal with the increasingly urgent problems of prison administration and reform.

Prison officials should be afforded considerable latitude in reconciling the fundamental rights of prisoners with the needs and purposes of the prison environment. I believe that the traditional rational basis test should be the one used to measure claims of prisoners in confinement that state action interferes with a constitutional right. This approach is suggested by two recent Supreme Court cases which have considered the rights of state prisoners in an institutional environment.

In Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Supreme Court, while holding that prison authorities must provide due process to prisoners facing institutional disciplinary proceedings, denied the prisoners the procedural protection it had given to those facing revocation of parole. It noted:

> [I]t is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society . . . to the very different situation presented by a disciplinary proceeding in a state prison.

*Id.* at 560, 94 S.Ct. at 2977. *See* Braxton v. Carlson, 483 F.2d 933 (3d Cir. 1973).

Similarly, in Pell v. Procunier, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), the Court held that, in light of the availability of alternative methods of communication by prisoners with members of the press, the prevention of prisoners' personal interviews with members of the press did not violate the prisoners' first amendment rights. The Court wrote:

> We would find the availability of such alternatives unimpressive if they were submitted as justification for governmental restriction of personal communication among members of the general public. We have recognized, however, that "[t]he relationship of state prisoners and the state officers

who supervise their confinement is far more intimate than that of a State and a private citizen," and that the "internal problems of state prisons involve issues . . . peculiarly within state authority and expertise." *Id.* at 825–826, 94 S.Ct. at 2805–2806.

I would therefore apply the rational basis equal protection test, which affords prison authorities the discretion they need, even if the state action involved affects a fundamental right. *Accord*, Cruz v. Beto, 405 U.S. 319, 323, 325–326, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (Rehnquist, J., dissenting).

I would not, however, apply the rational basis equal protection test if the state action were to create a suspect classification. The latitude allotted prison authorities in reconciling the rights of prisoners with the responsibilities of competent prison administration does not necessarily imply the use of a relaxed equal protection test when a suspect classification is created. *See* Lee v. Washington, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968) (racial segregation in prisons). Thus, while I would not apply the strict equal protection test to this prison regulation merely because it interfered with the prisoners' hairstyles, I would apply it if I concluded the regulation created a gender classification, and if I believed sex was a suspect class.[2]

Although the regulation appears on its surface to classify prisoners on the basis of gender, Dr. Joseph Mazurkiewicz, the state's expert witness, testified that the application of the regulation was predicated upon the character of the institution in which the prisoner was confined. Female prisoners in Pennsylvania are confined to "open" institutions. These are minimal security facilities where women live in structurally different environments and are housed in cottages. Prisoners in closed or maximum security institutions, such as Rockview, have only male prisoners. Prisoners in such institutions are subject to the hair regulation; prisoners, male or female, in open institutions including the regional correctional facility, or county jails, are not.

In Geduldig v. Aiello, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), the Supreme Court held that a disability program that covered all disabilities except those derived from normal pregnancy did not create a classification based on gender. It noted:

> The lack of identity between the excluded disability and gender as such under this insurance program becomes clear upon the most cursory analysis. The program divides potential recipients into two groups—pregnant women and nonpregnant persons. While the first group is exclusively female, the second includes members of both sexes.

*Id.* at 497 n. 20, 94 S.Ct. at 2492. Similarly, the group of prisoners whose hair length is regulated is all male, but the group of prisoners whose hair length is not regulated includes both males and females. I therefore conclude that the hair length regulation classifies on the basis of the type of institution in which the prisoner is confined, rather than on the basis of gender.

Since the state action here does not create an invidious classification or a classification based on gender, I believe the traditional "rational basis" test is the yardstick to be used in determining whether the hair length regulation violates the equal protection clause. Applying this yardstick, the record provides a legitimate basis for the differing treatment of prisoners under the regulation as is discussed more fully by Judge Sheridan in that part of his opinion dealing with the equal protection problem. I therefore believe the classifica-

---

2. It is unclear at this time whether sex is an invidious classification. *See* Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974) ; Frontiero v. Richardson, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973) ; Reed v. Reed, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971).

tion created is constitutionally permissible.

I might add, however, that I would have some difficulty sustaining the regulation under the equal protection clause if I viewed it as creating a classification based on gender. I am not convinced that the policies behind the regulation, such as ease of identification of prisoners, the prevention of smuggling of contraband, the prevention of homosexual assaults, the encouragement of individual discipline, and the maintenance of personal hygiene apply with any greater force to men than to women.

I therefore agree with Judge Sheridan that plaintiff's request for injunctive relief should be denied.

MUIR, District Judge (dissenting).

Initially, I must respectfully register my disagreement with the majority's position on the question of whether this three-judge court is required to follow the decisions of the Court of Appeals for the Third Circuit or whether we are bound only by decisions of the U. S. Supreme Court. Despite the fact that an appeal of our decision would be taken directly to the Supreme Court, it is my opinion that a three-judge district court is still a district court, and for that reason is bound by the decisions of the Court of Appeals for the Circuit in which the district is located. Having taken that position, I would hold, in contrast to the majority, that we are bound by the holding of the Court of Appeals for the Third Circuit that the right to determine the length and style of one's hair is implicit in the liberty guarantee of the due process clause of the Fourteenth Amendment. Stull v. School Board of Western Beaver Junior-Senior High School, 459 F.2d 339 (3d Cir. 1972). However, since the majority assumed *arguendo* that this is the law by which it is bound, this is not the primary ground for my dissent.

The test enunciated in *Stull* as to the regulation of hair length and style involves a balancing of the reasonableness of the regulation against the personal freedom guarantees enjoyed by the individual being regulated. The majority has found that the reasons put forth by the Defendant for the hair regulation in question outweigh the personal freedom interests of the prisoners who are subject to the regulations. My disagreement with the majority stems from my opinion that those reasons do not satisfy the test promulgated by the Third Circuit Court of Appeals in *Stull*.

The majority finds that the regulations are necessary to preserve internal order and discipline at state prisons, to maintain institutional security, and to rehabilitate prisoners. Certainly, if I felt that the regulations did in fact further these laudable ends, I would agree that they are reasonable regulations despite their infringement on a personal freedom guaranteed by the 14th Amendment. I do not, however, believe that they advance attainment of those goals or that they were promulgated for those purposes.

The Defendants claim that by regulating the length and style of inmates' hair internal order is enhanced in two ways. First, they assert that homosexual activity is reduced by the elimination of long hair. Second, they contend that short hair reduces disruption by those inmates who resent long hair on fellow inmates. Both of these arguments are unacceptable.

With respect to the first point, I doubt that the elimination of long hair styles will have a significant effect on homosexual activity. The causes for such activity include a great deal more than the length of a prisoner's hair. Allegedly combatting the problem by prohibition of longer than shoulder-length hair treats one of its possible symptoms but does not go to its cause. Such an approach to the problem ignores more significant reasons for its occurrence. Further, testimony of the Defendants' principal witness, Dr. J. F. Mazurkiewicz, Superintendent of the State Correctional Institution at Rockview, contradicts this alleged justification. At page 18 of the record of this case, Dr. Mazur-

kiewicz testified that prisoners under minimum security are not subject to the hair regulations in force in maximum security institutions. But there was no testimony that homosexuality is a problem confined to prisoners requiring maximum security measures. Therefore, if the claim that the reduction of homosexual activity constitutes a legitimate reason for regulation of hair length is to be taken seriously, the regulation should be in force throughout the prison system without regard to the degree of security in force.

I believe that the rationale that the hair regulation supposedly furthers internal order by reducing inter-prisoner disruption is impermissible. If, as the Third Circuit has held, the right to determine the length and style of one's hair is implicit in the liberty assurance of the due process clause of the 14th Amendment, the fact that other prisoners are upset by the exercise of this freedom should not be a grounds for denying its expression. One would not, for example, accept curbs on the exercise of a particular religion within the prison system on the ground that other prisoners object to it and cause disruptions with inmates who so worship. While I realize that freedom of religion is given greater constitutional weight than freedom to wear one's hair as one wishes, prison authorities must attempt to carry out their obligation to maintain order in a manner which infringes as minimally as possible on those personal freedoms which prisoners are entitled to enjoy during incarceration. It is the job of prison officials to control conflicts among inmates. That task may be made somewhat more difficult by the expression of constitutionally protected rights but it does not seem in this case to be too great a price to pay to protect those freedoms.

The Defendants assert as a further justification for the hair regulation that it aids in the maintenance of institutional security by eliminating at least one area of possible concealment of contraband. Admittedly, this is the strongest reason given for the existence of the regulation. I would have no argument with a regulation which prohibits long hair in maximum security institutions but not in minimum security prisons if that regulation were based on a demonstration that concealment of contraband was a problem of significant magnitude in the former institutions but not in the latter. But the plain fact is that the regulation on its face in no way indicates that this is the reason for its existence. The regulation, while making clear distinctions between male and female grooming, makes no reference whatsoever to maximum or minimum security status. If concealment of contraband is the problem sought to be attacked and if it only exists to a significant degree where maximum security is in force, then the regulation should be written to reflect that fact. But until such a change is made, the regulation as it is presently written cannot be sustained on the basis of an explanation for its existence which varies so greatly from its actual wording.

The Defendants' final major rationale for the hair regulation is that it furthers the rehabilitative function of prisons by restoring a minimum amount of personal discipline in the inmates. Besides being unconvincing, this justification for the regulation flies in the face of the holding by the Third Circuit that the determination of the length and style of one's hair is a personal freedom guaranteed by the 14th Amendment.

The Defendants have cited other minor reasons in support of the regulation. I do not intend in the course of this dissent to rebut all of those reasons. They are, in my view, not at all sufficient to outweigh the interest in personal freedom with which we are dealing here.

Even were I to agree with the majority's holding that the reasons stated for the hair regulation do outbalance the personal freedom guarantee in question, I would nonetheless dissent because I feel that the hair regulation violates the Equal Protection Clause of the 14th Amendment. Initially, I would like to

record my view that discrimination based on sexual classifications is either never, or hardly ever, justifiable. I am aware that no majority opinion of the Supreme Court has ever gone so far as to hold that sex is a "suspect" classification requiring the showing of a compelling state interest for different treatment based on that grouping. My position is that any difference in treatment based on sex probably cannot be justified.

The regulation which we are considering makes an unambiguous distinction between male and female grooming. The Defendants seek to explain away this difference in treatment by claiming that the difference, although written in terms of male and female, is really based on a difference between the degree of security in existence at the state's institutions for men and that in existence at the state's only institution for women. If it were true that the regulation is based on differences in security and if it were found that contraband was not a problem in the lower security areas, then the difference in permissible hair length could be justified. However, this justification would be based on a difference in the security in force at various prisons, not on a difference in the sex of the inmates who are housed there. Although this would be an acceptable rationale, the regulation in no way reflects this underlying reason but simply makes a distinction based on sex. Courts have in other situations looked to the actual enforcement of a challenged statute or regulation in determining whether or not it was constitutionally defective. However, a regulation which is so clearly invalid on its face cannot be saved by proof of a non-discriminatory pattern of enforcement. Such unambiguous regulations should be judged from their face. They nowhere state that they are in force only in maximum security prisons and I am not willing to accept the testimony of a prison official which is contrary to their plain meaning. The regulation exists and the potential for abuse is obvious. The regulation must, in my opinion, be struck.